614 F.2d 914
 80-1 USTC P 9197
 UNITED STATES of America and Joseph A. Dollard, Special
Agent, Internal Revenue Service, Plaintiffs-Appellants,
v.
Americo V. CORTESE, Prothonotary, Court of Common Pleas,
Philadelphia County, PB, JB, JJD, LK, SK, MK, SLL,
ML-1, ML-2, Intervenors-Defendants.
Appeal of UNITED STATES of America.
 No. 78-2005.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 15, 1979.
Decided Feb. 8, 1980.
 
 Daniel F. Ross (argued), M. Carr Ferguson, Gilbert E. Andrews, Joseph M. Gontram, Robert E. Lindsay, Washington, D. C., Peter F. Vaira, Jr., U.S. Atty., Philadelphia, Pa., for plaintiffs-appellants.
 Robert C. Daniels (argued), Philip L. Blackman, Adler, Barish, Daniels, Levin, & Creskoff, Philadelphia, Pa., for intervenors-defendants.
 Jonathan Vipond, III, Philadelphia, Pa., for Americo V. Cortese.
 Before HUNTER, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge.
 
 
 1
 This case requires us once again to examine the requirement that Internal Revenue Service (IRS) summonses be issued in good faith pursuit of the congressionally authorized purposes of 26 U.S.C. § 7602.[1] United States v. LaSalle National Bank, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978); see United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). It differs from prior cases involving IRS summonses in that the district court, in deciding that the summonses were not issued in good faith, focused on the effect that an informant's motive had on the Service's purpose of issuing the summonses rather than on the Service's interest in civil, as opposed to criminal remedies.[2] We conclude that the facts found and reasons given by the district court were legally insufficient to support a finding of bad faith, and we remand to the district court for further proceedings on the issue.[3]
 
 
 2
 * The Internal Revenue Service brought this action seeking judicial enforcement of summonses issued pursuant to § 7602. The summonses, issued by Special Agent Joseph Dollard on information provided by a confidential informant, were addressed to Americo V. Cortese, Prothonotary of the Court of Common Pleas of Philadelphia County. The summonses directed Cortese to produce "contingent fee agreements" and "statements of distribution" filed by a number of named negligence attorneys with the Prothonotary's office pursuant to Rule 202 of the Philadelphia Local Rules of Civil Procedure.[4] The documents involved were required to be filed under Rule 202 and contained details of contingent fees earned by the named attorneys.
 
 
 3
 Cortese responded to the complaint with a statement representing that he was prepared to produce the documents, but requesting that the affected attorneys be permitted to intervene. Nine of the attorneys did intervene and move to dismiss the complaint and quash the summonses on numerous grounds, including that the summonses were being used solely for the purpose of obtaining evidence for criminal proceedings and that there was no bona fide civil tax investigation of the intervenors.
 
 
 4
 The district court held a preliminary hearing on the motion at which special agent Dollard testified. See United States v. McCarthy, 514 F.2d 368 (3d Cir. 1975). The Court decided that further investigation into the good faith of the Service was warranted. At intervenors' request, an ex parte, in camera hearing was held with the government attorneys to review the documents provided by the informant.
 
 
 5
 Intervenors then moved to compel discovery from Dollard and the Assistant United States Attorney who was simultaneously conducting a grand jury investigation involving the same negligence attorneys. On October 28, 1977, the district court granted intervenors' motion in part, but specifically rejected the contention that "the summonses were issued for criminal purposes" on the ground that "intervenors have not alleged that a recommendation for criminal prosecution was made prior to the issuance of the summonses." Discovery was limited to the issues of "a) whether the IRS is conducting a legitimate investigation, for proper purposes, in good faith; and b) whether the summonses in this case pose 'second inspection' problems, under § 7605(b) of the Internal Revenue Code."[5]
 
 
 6
 After further discovery, a hearing was held by the district court on these issues. On April 28, 1978, the court ruled that the investigation was conducted in bad faith, refused to enforce the summonses and ordered the complaint dismissed. The reasoning in support of that order is the subject matter of this appeal.
 
 The district court found
 
 7
 "that the IRS investigation was not pursued in good faith. The improper purpose on the part of the informant is inextricably intertwined with the IRS investigation. . . . It is our conclusion that certain interests (centered in the insurance industry), which are adverse to the class of intervenors, have used the IRS with its knowledge, as a 'cat's-paw' to accomplish its purpose of retribution against the class of negligence attorneys."
 
 
 8
 The court relied on "the unusual facts and circumstances of this case" to support its finding of bad faith. First, the court observed that there was no evidence that either the IRS or the informant had knowledge of any violations of the Internal Revenue Code. Second, the information supplied by the informant did not concern a limited number of individuals, but was "wholesale in nature and concerned virtually the entire Philadelphia negligence bar." Third, only the negligence bar was targeted for investigation, despite the fact that Rule 202 applied to attorneys in other areas of the law. Finally, the court stated that
 
 
 9
 "(t)he IRS had to realize that the informant, who was instrumental in furnishing thousands of documents designed to get within an IRS net all of the members of the personal injury bar who customarily handle cases for plaintiffs in Philadelphia, was pursuing its own business purpose by giving the IRS the data."
 
 The court concluded
 
 10
 "A different result would obtain if the informant gave information which linked a finite number of individuals with actual violations of the Internal Revenue Code. It suffices to say we are convinced, and so find, that certain interests centered in the insurance industry used the IRS for a wrongful purpose; unfortunately, the IRS permitted itself to be so used."
 
 
 11
 The Order and Memorandum Opinion was signed by the district judge on April 28 and filed on May 2, 1978. The judge resigned his judgeship effective May 1, 1978.
 
 
 12
 The Government appeals the dismissal of its enforcement action. They contend that the reasons given by the district court are legally insufficient to constitute bad faith. Appellees, the intervenors below, respond that the determination of bad faith is a question of fact and that the record contains sufficient evidence to support such a finding.
 
 
 13
 Additionally, there have been several motions before this court. The appellants have moved to vacate the decision of the district court on the ground that the opinion was not filed by a sitting federal judge. Appellees have moved to gain access to the notes of testimony of the in camera hearings, claiming that without them, they are incapable of defending this appeal.
 
 
 14
 We agree with appellants that the reasons stated by the district court are legally insufficient to support a finding of bad faith on the part of the government, and we remand for further development of the record in light of the proper standard of bad faith. Because of this disposition, we need not reach the appellants' claim that the opinion filed after the resignation of the district judge was invalid. Finally, we conclude that it is unnecessary to release the in camera transcripts to appellees at this time.
 
 II
 
 15
 In United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court once again examined the requirement that the IRS not abuse the process of the courts in seeking enforcement of administrative summonses issued pursuant to § 7602. See, e. g., United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Court specifically established a two-step inquiry. "First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken."[6] LaSalle National Bank, 437 U.S. at 318, 98 S.Ct. at 2368.
 
 
 16
 The second step of the inquiry, relevant where the Service had not recommended prosecution to the Justice Department prior to the issuance of the summons, requires consideration of whether the Service, as an institution, at all times used the summons authority in good faith pursuit of the congressionally authorized purposes of § 7602, specifically, the civil determination or collection of taxes. Id. The Court further explained that this second step requires consideration of the standards of good faith set forth in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). LaSalle National Bank, 437 U.S. at 318, 98 S.Ct. at 2368.
 
 
 17
 Powell requires the Commissioner to show that the investigation has been conducted pursuant to a legitimate purpose, that the information sought may be relevant to that purpose, that the information was not already within the Commissioner's possession and that the administrative procedures of the Code have been followed. United States v. Powell, 379 U.S. at 57-58, 85 S.Ct. at 255.[7] Once the IRS has met its burden, the taxpayer bears a heavy burden of establishing an abuse of the court's process. See LaSalle National Bank, 437 U.S. at 317, 98 S.Ct. at 2368; United States v. Genser, 595 F.2d 146, 151 (3d Cir.), cert. denied, --- U.S. ----, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979). Specifically, "(s)uch an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255.[8]
 
 III
 
 18
 We now consider whether any of the reasons proffered by the district court are sufficient to support its conclusion of bad faith on the part of the IRS and its refusal to enforce the summonses. At the outset, we note that the district court based its conclusion of bad faith on the "unusual facts and circumstances of this case." The question before us is a legal one, whether the facts found by the district court constitute bad faith sufficient to undermine the validity of the summonses issued by the IRS. We are, therefore, not constrained by the clearly erroneous standard. See LaSalle National Bank, 437 U.S. at 319, n. 21, 98 S.Ct. at 2368, n. 21. Accordingly, we must examine the "unusual facts and circumstances" of this case to determine whether they warrant a conclusion of bad faith.
 
 
 19
 The district court first noted that there was no evidence that the IRS had knowledge of any violation of the Internal Revenue Code. It is clear, however, that the Service need not have knowledge of a violation of the tax laws in order to investigate for wrongdoing. The self-reporting system upon which our tax structure is based requires that the Service have wide powers to investigate for potential violations. See United States v. Bisceglia, 420 U.S. 141, 145-46, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975). In United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), the Supreme Court held that "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons . . . ." By analogy to other agencies, the Court suggested that the Service " 'has a power of inquisition . . . which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' " Id. at 57, 85 S.Ct. at 255 (quoting United States v. Morton Salt Co., 338 U.S. 632, 642-43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950)). See United States v. Bisceglia, 420 U.S. at 147, 95 S.Ct. at 919. Thus, the lack of knowledge of a violation of the code does not imply bad faith on the part of the IRS in the issuance of its summonses.
 
 
 20
 Similar reasoning leads to the conclusion that the second factor relied on by the district judge, that the investigation was aimed only at negligence lawyers while others who filed forms under Rule 202 were not being investigated, does not support a finding of bad faith.[9] The Commissioner does not have the resources to investigate all taxpayers. That fact, combined with the broad investigative mandate of the Service to determine who may be liable, see United States v. Bisceglia, 420 U.S. at 145, 95 S.Ct. at 918, indicates that Congress has given the Service the power to select the subjects of its investigation.[10] The district court apparently thought it relevant that no other attorneys who had filed Rule 202 forms were the subject of the summonses. However, since the Service had necessarily narrowed the subject of its investigation to the negligence bar prior to the issuance of the summonses, it would have no interest in the Rule 202 forms of other attorneys. The fact that other attorneys also filed Rule 202 forms which were not summoned is not probative of the Service's motive in selecting its investigative target.
 
 
 21
 The third concern of the district court was the in mass nature of the information tendered by the informant. Standing alone this fact is not relevant to the determination of bad faith. The Service is, of course, permitted to accept all information offered it.
 
 
 22
 The fact that the informant saw fit to hand over information on the entire negligence bar, however, does reflect on the motive of the informant. By far the most important factor in the district court's decision is its finding that the "IRS had to realize that the informant, who was instrumental in furnishing thousands of documents designed to get within an IRS net all of the members of the personal injury bar who customarily handle cases for plaintiffs in Philadelphia, was pursuing its own business purpose by giving the IRS data." "It suffices to say that we are concerned, and so find, that certain interests centered in the insurance industry used the IRS for a wrongful purpose; unfortunately, the IRS permitted itself to be so used."
 
 
 23
 We agree with appellant that the motive of an informant is not a relevant consideration in determining good faith. Despite its conclusion, the district court recognized that informants "have historically been known to hold grudges against those who are the subject matter of the information." Informants traditionally act in their own interest. It is a rare informant who is not interested in "pursuing his own purposes." Indeed, 26 U.S.C. § 7623 (1976) permits the Service to pay informants for information. The motive of the informant does not taint the motive of the IRS.
 
 
 24
 A different result, however, may obtain if it were found that either the Service or the investigating agent was motivated by the same animus that motivated the informant.[11] Portions of the district court's ruling may be interpreted as holding that the IRS shared the informant's motive: "the entire motivation of an informant, wedded body and soul to the insurance industry, turned out to be the motivation of the IRS itself." We do not believe, however, that the facts found by the district court are sufficient to support such a conclusion. Some support for this conclusion may be found from the facts that a rather narrowly defined class of individuals negligence attorneys were selected for investigation despite the absence of a suggestion of wrongdoing in the documents provided by the informant. But these facts must be considered in light of the broad discretion given the IRS to select investigative targets, and the policy of encouraging informants to supply information. Accordingly, without specific findings concerning the process or timing of the selection of the investigative target, the above cited facts are insufficient to support an inference that the Service was moved in the selection of its target by the improper aims of the informant.[12]
 
 IV
 
 25
 We now turn to appellees' motion to release the notes of the in camera hearing conducted on the issue of good faith by the district court. Appellees argue that failure to release the notes of testimony renders them unable to adequately respond to the government's appeal and, therefore, denies them due process of law.
 
 
 26
 This court recognizes the value of in camera testimony as a method of protecting the identity of a government informant while permitting an evaluation of the importance of his testimony. See United States v. Jackson, 384 F.2d 825, 827 (3d Cir. 1967), cert. denied, 392 U.S. 932, 88 S.Ct. 2292, 20 L.Ed.2d 1390 (1968). Accord, Black v. Sheraton Corp. of America, 184 U.S.App.D.C. 65, 68, 564 F.2d 550, 553 (D.C.Cir. 1977); United States v. Freund, 525 F.2d 873, 877 (5th Cir.), cert. denied, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976); United States v. Anderson, 509 F.2d 724, 728 (9th Cir.), cert. denied, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). Although here the district court went beyond the mere evaluation of the informer privilege and took testimony on the issue of the government's good faith, this procedure was expressly requested by the appellees. Appellees' position before this court, if adopted, would render meaningless the protections of the in camera procedure which they requested. Cf. In re United States, 565 F.2d 19, 23 (2d Cir. 1977), cert. denied, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978) (disclosure to attorneys is likely to compromise the policy behind the informer privilege).
 
 
 27
 The appellees have advanced no support for their theory that due process requires access to previously unchallenged in camera proceedings for preparation of an appeal, particularly where the reviewing court has full access to the in camera testimony.[13] In numerous cases reviewing courts have, without assistance, reviewed in camera transcripts and documents. See, e. g., United States v. Anderson, 509 F.2d 724, 730 (9th Cir.), cert. denied, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); Natta v. Hogan, 392 F.2d 686, 691 (10th Cir. 1968). We have carefully reviewed the in camera testimony and, in light of our disposition of this case, conclude that the government's interest in protecting its informant outweighs the very limited potential benefit to appellees of release of the information. Cf. McCray v. Illinois, 386 U.S. 300, 310, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (applying balancing test to need for release of informant's identity in criminal trials and pretrial proceedings). Because we have decided the instant case on the basis of the legal insufficiency of the trial judge's findings of fact, the in camera testimony is irrelevant to this appeal. Accordingly, appellees' motion is denied. On remand, the district court may reevaluate appellees' request in light of the then existing circumstances.
 
 V
 
 28
 Based on our discussion above, we conclude that the "unusual facts" of this case as found by the district court do not constitute a sufficient basis for finding that the Internal Revenue Service summonses were not issued in good faith and we vacate the order of the district court. We therefore remand for further proceedings not inconsistent with this opinion. On remand, should the district court deem it appropriate, it may conduct a further hearing on the question.[14]
 
 
 29
 GARTH, Circuit Judge, concurring.
 
 
 30
 I concur in the result reached by the majority opinion and in most of its analysis as well, yet I write separately to emphasize two concerns which I believe require additional explanation.
 
 
 31
 First, this court has recognized that the enforcement of Internal Revenue Service summonses often presents nettlesome problems. Not the least of these has been the confusing signals given to the district courts by the vague directives of the opinions in Powell v. United States, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1974), United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), and the many cases that have come down in this and other circuits. In an attempt to provide clear guidance for the district courts and the bar, we exhaustively catalogued the substantive law and procedures to be followed in I.R.S. summons enforcement proceedings in United States v. Garden State National Bank, 607 F.2d 61 (3d Cir. 1979). While the majority opinion does detail various procedures drawn from Supreme Court and our precedents with respect to challenges to enforcement proceedings, I am concerned that this discussion may be read as a substitution for, and possible dilution of, the procedures which we described extensively in Garden State. Rather than risk confusion in this respect, I believe it necessary to express what I understand the panel's opinion to affirm: that Garden State still controls as to the matters we discussed there. One of the reasons that Garden State undertook a review and summary of the various considerations bearing on the enforcement of I.R.S. summonses was to furnish future guidance for district courts and the bar. Id. at 67. This being so, I fear that if the limited procedures set forth in the majority opinion are regarded as either all-inclusive or as modifying or reducing the Garden State standards and requirements, we will have performed a disservice to those who must follow our directions. My understanding of the majority opinion is that we have not retreated one iota from our holding and discussion in Garden State.
 
 
 32
 More disturbing to me, however, is the majority's discussion relating to the "motive" of the Service, and stating that although the facts are not present to support a conclusion equating the Service's motive to that of the informant, if it were otherwise, perhaps institutional bad faith might be found. I agree with the majority that the facts found by the district court are insufficient to support any such conclusion. I do not think, however, that we should speculate upon, or engage in, discussion of this issue. This issue is not before the court, and no evidence which could be considered as raising or supporting this issue appears in the record. Thus, it is my firm conviction that any discussion of what "may obtain if it were found that either the Service or the investigating agent was motivated by the same animus that motivated the informant," Majority op., supra, at p. 921 (emphasis supplied), has no relevance to our disposition. Hence, in my view this portion of the majority opinion, together with the footnote which discusses the discovery that would have to be provided if such a case ever were presented, both of which are no more than dicta, should not have been included in the court's opinion.
 
 
 33
 I also believe that there has been so much uncertainty and murkiness clouding this entire area of challenges to the enforcement of I.R.S. summonses that we ought not to contribute still more. Thus, we ought to assiduously avoid leading anyone to believe that we have changed our procedures when we have not. We should also restrain ourselves from conjecturing about possible findings that may never be made.
 
 
 34
 Because the panel was not called upon to address either of these subjects, I cannot, and do not, subscribe to so much of the majority opinion which departs in any respect from the statement of Garden State procedures. Nor do I subscribe to so much of the majority opinion which, as I have pointed out, is dicta.
 
 
 
 [1]
 26 U.S.C. § 7602 (1976) provides in relevant part:
 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; . . . .
 
 
 [2]
 See, e. g., United States v. Garden State National Bank, 607 F.2d 61 (3d Cir. 1979); United States v. Genser, 595 F.2d 146 (3d Cir.), cert. denied, --- U.S. ----, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979)
 
 
 [3]
 We are compelled to remand for further proceedings, rather than for further articulation of the facts, because the district judge has since resigned
 
 
 [4]
 Rule 202 provides in relevant part:
 (f) Every attorney who enters into an agreement with a client with reference to legal representation for damages for death or personal injuries sustained either at common law or under the provisions of the Workmen's Compensation Act . . . under the terms of which agreement the attorney's compensation is wholly or partly on a contingent basis, shall file with the Prothonotary:
 (1) Within 20 days of the date of its execution, an executed copy of the agreement; and
 (2) Within 20 days of the final disposition of the case, a statement showing in reasonable detail the disposition of the amount received.
 
 
 [5]
 26 U.S.C. § 7605(b) provides:
 No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
 
 
 [6]
 The Court also commented that a delay in submitting a recommendation to the Justice Department, where there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution, would be tantamount to the use of the summons authority after the recommendation. LaSalle National Bank, 437 U.S. at 316-17, 98 S.Ct. at 2367-68. Since LaSalle was decided subsequent to the decision below, the district court ruled that a recommendation to the Justice Department was necessary to support an allegation of criminal purpose. On remand, the impact of LaSalle should be considered
 
 
 [7]
 In United States v. McCarthy, 514 F.2d 368 (3d Cir. 1975), this court defined the procedure to be used for this showing. The IRS may make a prima facie showing by affidavit of the investigating agent stating compliance with Powell. The burden then shifts to the taxpayer to rebut these allegations
 
 
 [8]
 For further discussion on the enforcement of IRS summons, see United States v. Garden State National Bank, 607 F.2d 61 (3d Cir. 1979); United States v. Serubo, 604 F.2d 807 (3d Cir. 1979); and United States v. Genser, 602 F.2d 69 (3d Cir. 1979) (per curiam) (Genser III)
 
 
 [9]
 To the extent this factor is probative of a wrongful motive of the IRS, it is considered below
 
 
 [10]
 "There is no intimation in the legislative history that Congress intended the Courts to oversee the Commissioner's determinations to investigate." United States v. Powell, 379 U.S. at 56, 85 S.Ct. at 254
 
 
 [11]
 The Supreme Court, in LaSalle National Bank, 437 U.S. at 315, 98 S.Ct. at 2366, in the context of ascertaining a civil versus a criminal purpose to an appeal, held that the institutional motive of the Service, not the motive of the investigating agent, was the relevant consideration. Where the summons is challenged as a harassment, however, the motive of the agent may be relevant. Id. at 316 n. 17, 98 S.Ct. at 2367 n. 17. See United States v. Garden State National Bank, 607 F.2d 61, 68 n. 10 (3d Cir. 1979)
 
 
 [12]
 We are mindful of the difficulty presented in proving motive and do not mean to reduce the importance or acceptability of circumstantial evidence in this inquiry. We further note that in almost every case, the information needed to demonstrate an improper motive on the part of the Service is in the hands of the government. Normally, the taxpayer's only access to such information is through limited basic discovery carefully tailored to the purposes of the inquiry. Accordingly, such discovery should be provided. Cf. United States v. Genser, 595 F.2d 146, 152 (3d Cir.), cert. denied, --- U.S. ----, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979) (need for pretrial discovery and evidentiary hearing where taxpayer alleges that he is the subject of a criminal investigation)
 
 
 [13]
 The two cases cited by appellees are clearly inapposite. Groendyke Transport, Inc. v. Davis, 406 F.2d 1158 (5th Cir.), cert. denied, 394 U.S. 1012, 89 S.Ct. 1628, 23 L.Ed.2d 39 (1969), held only that the due process clause did not preclude a summary disposition, without oral argument, by the National Labor Relations Board. In re January 1974 Special Investigating Grand Jury, 241 Pa.Super. 246, 361 A.2d 325 (1976), a Pennsylvania court held that in the absence of a compelling state interest, an in camera hearing on the issue of attorney disqualification did not adequately protect a grand jury witness's right to the counsel of his choice. The portion of the case cited by appellees, concerning the ability of the appellant to a "meaningful appeal" indicates only that on remand, a new in camera hearing would have to be held on the record to enable the reviewing court to evaluate the testimony given
 
 
 [14]
 Intervenors have also raised numerous constitutional arguments against enforcement of the summonses which were considered, but not decided, by the district court. Because of our result, we need not consider these arguments, and believe that they are best left to the district court in the first instance