UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

HUMEDCO ENTERPRISES, INC., also known as B.C.D., Inc., and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

NORTHEAST WOMENS CENTER, INC. and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

LADIES CENTER, NEBRASKA, INC. also known as Ladies Center of Nebraska, Inc. and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

ATLANTA WOMEN'S CENTER, INC., also known as Atlanta Womens Medical Center, and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

NORTH JERSEY GYNECOLOGICAL GROUP, INC. also known as North Jersey Gynecological Center, Inc., and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

METARIE WOMEN'S MEDICAL CENTER, INC. and Malcolm Polis.

UNITED STATES of America and William J. Pyfer, Special Agent, Internal Revenue Service

v.

WOMEN'S MEDICAL CENTER OF PROVIDENCE, INC. and Malcolm Polis.

UNITED STATES of America and
William J. Pyfer, Special Agent,
Internal Revenue Service

v.

CHERRY HILL WOMEN'S CENTER,
INC. and Malcolm Polis.

Civ. A. Nos. 81–809 to 81–813 and
81–1094 to 81–1096.

United States District Court,
E. D. Pennsylvania.

May 4, 1981.

S. Martin Teel, Jr., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiffs.

Lowell E. Mann, Langhorne, Pa., Albert Squire, Levittown, Pa., for defendants.

## SUR PLEADINGS AND PROOF

LUONGO, District Judge.

In these consolidated civil actions, the Internal Revenue Service (IRS) seeks enforcement of IRS summonses to produce various records from the defendant corporations, pursuant to an investigation of the tax liability of defendant Malcolm Polis. Upon motion of the government, I issued orders for the defendants to show cause why the summonses should not be enforced, and a hearing was held on April 6, 1981, at which representatives of the defendants and of the IRS testified. Thereafter the parties submitted requests for findings of fact and conclusions of law, and memoranda addressed to the legal issues. On the basis of this record, I make the following

## I. FINDINGS OF FACT

1. Plaintiffs are the Internal Revenue Service and Special Agent William J. Pyfer of the IRS Criminal Investigation Division.

2. Defendants are Malcolm Polis and eight corporations engaged in the business of performing abortions:

Humedco Enterprises, Inc.
Northeast Womens Center, Inc.
Ladies Center, Nebraska, Inc.
Atlanta Women's Center, Inc.
North Jersey Gynecological Group, Inc.
Metarie Women's Medical Center, Inc.
Women's Medical Center of Providence, Inc.
Cherry Hill Women's Center, Inc.

3. The IRS is conducting an investigation to determine the tax liabilities of Malcolm Polis for the years 1976 through 1979.

4. During each of those years, Polis was the chief operating officer, a stockholder, and a director of each of the defendant corporations.

5. Pursuant to information he received from another IRS branch office that Polis may have diverted income from at least one of the corporations to his own use, Special Agent Pyfer issued summonses to each of the defendant corporations.

6. Each summons sought the following corporate records:

—Cash receipts journal and ledger.
—Cash disbursements journal.
—Sales journal and ledger and all related invoices.
—Accounts receivable ledger and journal.
—Purchase journal, accounts payable ledger and all related invoices and purchase orders.
—General ledger and general journal.
—Payroll ledger and all related records.
—Petty cash books and vouchers.
—Minute books.
—Stock subscription records.
—Outstanding and/or cancelled notes supporting corporate loans to officers,

directors, shareholders and other parties.

—Any other records related to loans made to or made by the corporation.

—All patient daily record sheets relative to payments received.

—Cancelled checks and bank statements for all accounts; signature card and deposit tickets.

7. With the exception of the corporations' tax returns, and forms W–2 filed by them, the IRS does not have possession of any of the records requested.

8. The forms W–2 in the possession of the IRS are in storage in the IRS Service Center, from which they are not readily retrievable. Defendants have not produced evidence that production of copies of forms W–2 issued by them will cause them substantial difficulty or expense.

9. Five of the summonses were returnable on July 28, 1980. Special Agent Pyfer was not present on that date when Polis, as an officer of the corporations, appeared at the IRS office in response to the summonses. Two agents of the Criminal Investigation Division who were present offered to accept whatever records Polis had brought in response to the summons. Polis had no records with him.

10. On July 29, 1980, Special Agent Pyfer telephoned Lowell Mann, counsel for Polis. Mann informed Pyfer that Polis intended to object to all of the summonses on several grounds, and Pyfer agreed to accept a letter from Mann setting forth the objections as Polis' response to the summonses.

11. Special Agent Pyfer, on behalf of the IRS, thereafter commenced this action to enforce the summonses.

## II. DISCUSSION

■ To secure judicial enforcement of a summons issued under the Internal Revenue Code, 26 U.S.C. § 7602, the IRS must establish that:

 a. the investigation will be conducted pursuant to a legitimate purpose;

 b. the inquiry may be relevant to that purpose;

 c. the information sought is not already in the Service's possession; and

 d. the administrative steps required by the Internal Revenue Code have been followed.

*United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964); *United States v. Garden State National Bank*, 607 F.2d 61 (3d Cir. 1979); *United States v. McCarthy*, 514 F.2d 368 (3d Cir. 1975).

Defendants do not dispute that the summonses here were issued for legitimate investigative purposes. They do contend, however, that the IRS has not met the other three prerequisites for judicial enforcement. First, defendants contend that the IRS has not shown that the requested records are relevant to its investigation of the tax liability of Malcolm Polis. In *United States v. Egenberg*, 443 F.2d 512, 515 (3d Cir. 1971), the court characterized the requisite showing of relevancy as "very minimal" and cited with approval the following test for relevancy established by the Court of Appeals for the Second Circuit:

The question, and it is not always one that lends itself easily to solution, is whether from what the government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable—in short, whether the 'might' in the articulated standard 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered.

*United States v. Harrington*, 388 F.2d 520, 524 (2d Cir. 1968). Defendants contend that the IRS has no more than an idle hope that the corporate records requested will throw light upon Polis' tax liability, because the information supplied to Special Agent Pyfer that there may be improprieties in Polis' dealings with the corporations is too vague to justify examination of the records.

■ Defendants' argument on relevancy focuses upon the adequacy of the "tip"

received by Pyfer that Polis' dealings with the corporation were questionable. This is a misconception of the test for determining relevancy. To enforce a summons, the IRS need not have evidence of a violation of the tax laws, and it need not meet any standard of probable cause. *United States v. Cortese*, 614 F.2d 914, 920 (3d Cir. 1980). Like the grand jury, the IRS has inquisitorial powers, and can investigate "'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Id.*, quoting *United States v. Powell, supra*, 379 U.S. at 57, 85 S.Ct. at 254–255. Accordingly, the test for relevancy is not whether the IRS has a specific reason for pursuing an investigation, but whether the records it seeks might shed light upon the taxpayer's liability. The focus of the inquiry is the relationship between the taxpayer and the entity from which records are sought. *See United States v. Egenberg, supra; United States v. Harrington, supra.*

■ Here, Polis was the chief operating officer, a stockholder, and a director of each of the corporations from which records are sought. Because Polis indisputably exercises substantial control over the dealings of the corporations, I am persuaded that examination of the records might shed light on Polis' tax liability. For instance, records of payments out of the corporations might reveal disguised payments to Polis. Patient record sheets might reveal abortions performed but not reflected in the financial records of the corporations, generating unreported cash income for Polis. Minutes of corporate meetings might reveal diversion of corporate assets to Polis for which he had tax liability. In short, there are a variety of ways in which the records requested could reveal pertinent information about Polis' tax liability, and the nexus between Polis and the corporations is plainly close enough to satisfy the minimal showing of relevance required.

■ Second, defendants contend that certain of the records requested by the IRS are unnecessary, because the information contained in them is reflected in the corpora-

tion's tax returns and forms W–2 already filed with the IRS. Plainly the IRS is entitled to have the records which constitute the underlying bases for the corporate returns, because the returns themselves do not supply sufficient detail to assist in the IRS' investigation of the individual tax liability of Polis. As to the forms W–2, although technically the forms are in the possession of the IRS, there is no practical means of retrieving them from the Internal Revenue Service Center. Defendants have not suggested that it will be burdensome for them to supply copies from their files, nor have they suggested that the IRS has requested these records for the purpose of harassment. Moreover, defendants will have to search their files in any case in order to supply other items properly requested by the summons, which the IRS does not now possess. Under these circumstances, the Service may properly resort to a summons to obtain production of the forms. *United States v. First National State Bank of New Jersey*, 616 F.2d 668, 674–75 (3d Cir. 1980), *cert. denied, sub nom. Levey v. United States*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980); *see United States v. Berkowitz*, 488 F.2d 1235 (3d Cir. 1973), *cert. denied*, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99 (1975).

■ Third, defendants contend that the IRS failed to follow the administrative steps required by the Internal Revenue Code because Special Agent Pyfer was not present when Polis appeared at the IRS office in response to the summonses. Had Polis appeared with the requested records and been prepared to give testimony on the date for appearance specified by the summons, there might be some merit to defendants' argument. But Polis appeared without the records, and the letter from counsel announcing defendants' intention to challenge the summonses was dated for the appearance date. The IRS agents present when Polis appeared invited him to leave whatever records he had brought. Quite obviously the defendants had no intention of producing the records, regardless of whether Pyfer was present, and therefore in my view Pyfer's absence when Polis ap-

peared in response to the summonses has no practical or legal significance. *But see United States v. Lipshy,* 492 F.Supp. 35 (N.D.Tex.1979).

 Finally, defendants raise a partial affirmative defense to enforcement of the summonses, *United States v. Garden State National Bank, supra,* 607 F.2d at 71, contending that production of patients' records would violate the physician-patient privilege, and the patients' constitutional right to privacy. Defendants concede that there is no physician-patient privilege under federal or common law, but urge this court to recognize the privilege created by Pennsylvania law. This contention must be rejected, because "no state-created privilege has been recognized in federal cases, . . . [n]or is there justification for such privilege where records relevant to income tax returns are involved in a criminal investigation or prosecution." *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973).

As to the privacy interest of the patients,[1] the Supreme Court has identified two kinds of privacy interests: an interest in freedom from government interference in making certain personal decisions, and an interest in avoiding disclosure of personal matters. *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64 (1977). Defendants do not contend that the government would in some way attempt to interfere with a clinic patient's decision to have an abortion, and therefore I assume that defendants' position is that the patients' right to avoid disclosure of personal information would be violated.

The IRS contends that since its investigatory powers are analogous to those of a grand jury, individual privacy rights must necessarily yield as they would in a grand jury investigation. *In re Grand Jury Subpoena,* 460 F.Supp. 150 (W.D.Mo.1978); *see United States v. Calandra,* 414 U.S. 338, 353, 94 S.Ct. 613, 622, 38 L.Ed.2d 561 (1974). I see no need to reach this issue, because I am persuaded that the patients' right to avoid disclosure of personal matters is not

seriously impaired by the defendants' compliance with the summons.

In *Whalen v. Roe, supra,* the Court reviewed a New York statute requiring that the name, address, and age of each patient taking certain dangerous drugs be kept on file with the state health department for a period of five years. The Court acknowledged the patients' privacy interest in this information, and noted the risk that the information might be publicly revealed by improper program administration, or during judicial proceedings. As to the former risk identified by the Court, it held that in the absence of evidence that patients' privacy rights have been violated under similar statutory schemes, there was no justification for invalidating the statute. *Id.,* 429 U.S. at 601, 97 S.Ct. at 877. As to the latter possibility, the Court held that there was no reason to assume that in the event of a judicial proceeding involving the information the court would not devise an adequate means for protecting the privacy of the patient. *Id.*

Here, the possibility of public disclosure is slight. The identity of the patients of the clinics constitutes "return information," 26 U.S.C. § 6103(b)(2)(A), which is protected against disclosure under § 6103(a) of the Internal Revenue Code. Wilful disclosure of such information by an IRS employee constitutes a felony, § 7213(a), and a taxpayer may recover damages from any government employee proven to have disclosed return information. § 7217(a). Furthermore, third parties could not obtain the names of clinic patients through the Freedom of Information Act, 5 U.S.C. § 552, because return information is not subject to disclosure under the Act. *Mason v. Callaway,* 554 F.2d 129 (4th Cir. 1977), *cert. denied,* 437 U.S. 877, 98 S.Ct. 424, 54 L.Ed.2d 295 (1977); *Zale Corp. v. Internal Revenue Service,* 481 F.Supp. 486 (D.D.C. 1979). Similarly, if the IRS investigation of Polis should result in court action, there is no reason to assume that the names of the clinic patients, if relevant to the case, will be left unprotected by the court. *Whalen,*

---

1. The government has not challenged the standing of the defendants to assert the privacy interests of their patients, and therefore I will assume that they have standing.

**1308**

*supra.* Accordingly, I reject defendants' contention that enforcement must be denied to protect the privacy rights of their patients.

### III. CONCLUSIONS OF LAW

1. This court has jurisdiction, under 26 U.S.C. §§ 7402(b), 7604(a), judicially to enforce a summons issued by the Internal Revenue Service or its agent.

2. The Internal Revenue Service has carried its burden of establishing that:

(a) the investigation will be conducted pursuant to a legitimate purpose;

(b) the inquiry may be relevant to that purpose;

(c) the information sought is not already in the Service's possession; and

(d) the administrative steps required by the Internal Revenue Code have been followed.

3. Defendants have failed to establish an affirmative defense to enforcement of the summonses.

4. The Internal Revenue Service is entitled to an order directing the defendants to comply with the summonses issued to them.