**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3401
_____

G2A.COM SP. Z.O.O. (LTD.),
                                        Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of Delaware
No. 1:17-mc-00177
District Judge: Hon. Leonard P. Stark


_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2019
_____

Before: McKEE, PORTER, and RENDELL, *Circuit Judges*.

(Filed: October 15, 2019)


_____

OPINION*
_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

The Republic of Poland requested, and the Internal Revenue Service issued, a third-party administrative summons under the United States–Poland Tax Treaty[1] to assist with its ongoing investigation into potential Polish income tax liabilities of G2A.COM Sp. z.o.o. (Ltd.). G2A petitioned to quash the subpoena and now challenges the District Court's partial denial of its petition. G2A argues on appeal that (1) it should have received notice before the IRS served the summons on a third party that Poland believed may have relevant information, and (2) the IRS failed to follow the procedures of the Hague Service Convention.[2] We disagree and will affirm the judgment of the District Court.

I

Since 2013, the Polish tax authority has been investigating G2A, a Polish company involved in video-game trade, for Polish tax liabilities. As part of that investigation, Poland contacted the United States to request information from Gate Arena, a Delaware limited liability company that Poland suspected was linked to G2A. Poland initiated the request under the Tax Treaty, which permits both countries to request tax-related information from each other to prevent double taxation and tax evasion.

---

[1] Convention Between the Government of the United States of America and the Government of the Polish People's Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Oct. 8, 1974, 28 U.S.T. 891 ("Tax Treaty").

[2] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Service Convention").

In accordance with the Tax Treaty, on June 28, 2017 the IRS served a summons on the Corporation Trust Company ("CTC"), Gate Arena's listed registered agent, requesting 16 categories of information about Gate Arena's transactions with G2A. The next day, the IRS sent notice of service and a partial copy of the summons by registered mail to G2A in Poland, which G2A received on July 12, 2017. The IRS thus complied with the notice requirement of 26 U.S.C. § 7609(a) (notice of the third-party summons must be sent to the person identified in the summons within 3 days of the day on which service is made and no later than 23 days before the date upon which any responsive records are to be examined). CTC responded to the summons on July 10, 2017—two days before G2A received its copy.

CTC informed the IRS that though it was listed as the registered agent, it had no records of CTC's actually serving as Gate Arena's agent or representative and therefore had no records responsive to the summons. So, the IRS withdrew the summons. Nonetheless, the IRS still intends to issue a report to the Polish authority, which G2A asserts will bolster Poland's tax liability investigation against it by making Gate Arena appear to be a shell company. The District Court found that even though the summons has been withdrawn, the issues raised are not moot. We agree.

G2A moved to quash the summons on multiple grounds. The District Court granted G2A's petition in part, quashing two requests which the government declined to defend. The District Court denied the rest of G2A's petition for the remaining requests. On appeal, G2A contends the IRS failed to give G2A advance notice of the summons as

3

required by the Internal Revenue Code and Tax Treaty, and that the IRS's notice sent by registered mail violated the Hague Service Convention.

II

The District Court had jurisdiction over G2A's petition to quash the IRS's summons under 26 U.S.C. § 7609(h)(1) and 28 U.S.C. §§ 1340 and 1346. We have jurisdiction under 28 U.S.C. § 1291. We review the enforceability of an IRS summons de novo. *United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999).

The Internal Revenue Code permits the IRS to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax …, or collecting any such liability." 26 U.S.C. § 7602(a). For the same purpose, it also permits the IRS to "examine any books, papers, records, or other data which may be relevant or material." *Id.* The IRS may also issue summonses and examine data when requested by a treaty partner. *See*, *e.g.*, *United States v. Stuart*, 489 U.S. 353 (1989); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001).

A party may challenge a summons in a federal district court under 26 U.S.C. § 7604(a). Bearing the initial burden at the outset, "the IRS need only demonstrate good faith in issuing the summons." *Stuart*, 489 U.S. at 359. The Supreme Court has established four factors for determining whether the IRS acted in good faith. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). The IRS must show that: (1) "the investigation will be conducted pursuant to a legitimate purpose," (2) "the inquiry may be relevant to the purpose," (3) "the information sought is not already within the [IRS's]

4

possession," and (4) "the administrative steps required by the [Internal Revenue] Code have been followed." *Id.*; *United States v. Rockwell Int'l*, 897 F.2d 1255, 1262 (3d Cir. 1990). Additionally (though not relevant here), a referral to the Department of Justice for criminal prosecution precludes enforcement of an IRS summons. *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 (1978); *United States v. Cortese*, 614 F.2d 914, 919 (3d Cir. 1980).

The government can satisfy the *Powell* factors by submitting an affidavit from the investigating agent. *United States v. Clarke*, 573 U.S. 248, 250 (2014); *Cortese*, 614 F.2d at 919 n.7; *see also United States v. McCarthy*, 514 F.2d 368 (3d Cir. 1975). After the government makes a prima facie case, the taxpayer may still "challenge the summons on any appropriate ground." *Powell*, 379 U.S. at 58 (quotation omitted). But "the taxpayer bears a heavy burden of establishing an abuse of the court's process." *LaSalle Nat'l Bank*, 437 U.S. at 317; *Cortese*, 614 F.2d at 919. An abuse of the court's process exists if the taxpayer shows, for example, that the government issued the summons "for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Cortese*, 614 F.2d at 919 (quoting *Powell*, 379 U.S. at 58). We will address G2A's arguments in turn.

A

The District Court properly found that, because the IRS agent provided an affidavit satisfying the *Powell* factors for a prima facie case, the burden shifted to G2A to refute those factors or challenge the summons in another way. G2A argues now, as it did

5

before the District Court, that the government has not satisfied the fourth factor in *Powell*'s good-faith test because the IRS did not follow the administrative steps of the Internal Revenue Code. Specifically, G2A argues that notice must be given to the taxpayer before the IRS may contact a third party. *See* 26 U.S.C. § 7602(c)(1)(A) ("An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer unless" the IRS provides "notice which informs the taxpayer that contacts with persons other than the taxpayer are intended to be made."); *see also* § 7609(a). G2A contends that because it received notice after the IRS served the summons on CTC, the IRS violated this provision of the Code.

The District Court rejected G2A's argument, concluding that a Department of Treasury regulation expressly exempts inquiries on behalf of foreign jurisdictions from the advance-notice requirement. Specifically, the regulation excludes liability for any tax imposed by any other jurisdiction from the "tax liability" referenced in § 7602(c). 26 C.F.R. § 301.7602-2(c)(3)(i)(C).[3] We agree with the District Court. Congress gave the Secretary of the Treasury the authority to prescribe rules and regulations for enforcing the Internal Revenue Code, and the Treasury regulation was promulgated under that express authority. 26 U.S.C. § 7805(a). If a regulation reasonably interprets and implements an ambiguous statutory provision, it must be given judicial deference. *United States v.*

---

[3] "Tax Liability. A tax liability means the liability for any tax imposed by title 26 of the United States Code (including any interest, additional amount, addition to the tax, or penalty) and *does not include the liability for any tax imposed by any other jurisdiction* nor any liability imposed by other Federal statutes." (Emphasis added.)

6

*Haggar Apparel Co.*, 526 U.S. 380, 383 (1999). And this Treasury regulation reasonably interprets "tax liability," on which the statute was silent, to mean only taxes imposed by the United States. This interpretation is consistent with the purpose § 7602, which is to "determin[e] the liability of any person for any *internal* revenue tax." (Emphasis added).

G2A argued to the District Court that the Treasury regulation impermissibly created a new exception not recognized by the statute, but it has abandoned that argument on appeal. Instead, G2A now argues that the Tax Treaty "only allows the IRS to obtain and provide information related to Polish tax liabilities through the same administrative practices by which the IRS is authorized to investigate tax liabilities under the [Internal Revenue] Code." In other words, G2A argues that the Tax Treaty forecloses reliance on the Treasury regulation and provides the only method by which the IRS may obtain tax-related information from third parties. G2A bases its argument on the last phrase of Article 23 of the Tax Treaty:

> If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this article in the form of depositions of witnesses and copies of unedited original documents (including books, papers, statements, records, accounts, or writings), *to the same extent such depositions and documents can be obtained under the laws and administrative practices of each Contracting State with respect to its own laws.*

28 U.S.T. 891, Art. 23 (emphasis added).

As an initial matter, G2A forfeited this argument by failing to present it to the District Court. To preserve a matter for appellate review, a party must develop the argument before the district court "at a point and in a manner that permits the court to consider its merits." *Garza v. Citigroup, Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) (quoting

7

*Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)); *see also*

*DIRECTV, Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007). "[M]erely raising an *issue*

that encompasses the appellate argument is not enough." *Spireas v. Comm'r of Internal*

*Revenue*, 886 F.3d 315, 321 (3d Cir. 2018) (quoting *United States v. Joseph*, 730 F.3d

336, 337 (3d Cir. 2013)). Rather, the argument must have been made with "exacting

specificity" in the district court. *Id.*

Here, in its amended petition to quash the IRS's summons, G2A gestured toward

its Article 23 argument in a footnote related to standing. But footnoting an issue for

standing purposes is not the same as raising it on the merits. *See John Wyeth & Bro. Ltd.*

*v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in

passing (such as, in a footnote), but not squarely argued, are considered waived.").

G2A asks us to excuse forfeiture, as we have discretion to do. *See Barefoot*

*Architect, Inc. v. Bunge*, 632 F.3d 822, 834–35 (3d Cir. 2011). We will consider forfeited

arguments in "exceptional circumstances" such as when consideration of an issue would

serve a public interest, when an argument is "closely related" to the arguments raised

below, and when its application would not further the purposes of forfeiture, including

the judicial interests that it serves. *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416–17 (3d

Cir. 2011). None of these exceptional circumstances are present here, so we decline to

excuse G2A's forfeiture.

G2A argues that we should excuse forfeiture because its new argument raises an

issue of first impression and future litigants might benefit from our analysis. We disagree

that every novel argument necessarily impacts the public interest just because it is novel.

8

We find no other instances of a party challenging the Treasury regulation in this context, which suggests that resolution of the question here would impact only the parties to this case. *Compare Gen. Refractories Co. v. First State Insur. Co.*, 855 F.3d 152, 162 (3d Cir. 2017) (excusing waiver because the implications of the legal question would affect many insurers and insureds beyond the immediate suit). Other than the novelty of its argument, G2A offers no other public-interest reason for why we should address the forfeited argument.

G2A also argues that it sufficiently previewed in the District Court the components of its new argument on appeal. We disagree. G2A's original argument exclusively required the District Court to interpret § 7602, not decide the issue of whether the Tax Treaty dictates how the IRS may request tax information from third parties. Though both arguments assume that the Treasury regulation cannot excuse the IRS from providing notice before serving a third-party subpoena, the arguments rely on propositions so distinct that we do not consider them "closely related."

Finally, G2A argues that judicial interests which forfeiture seeks to preserve would not be impacted—because the new argument is a purely legal question and the government had an opportunity to respond. But courts also have an interest in "promoting the finality of judgments and conserving judicial resources and preventing district courts from being reversed on grounds that were never urged or argued before [them]." *Lesende v. Borrero*, 752 F.3d 324, 333 (3d Cir. 2014) (quoting *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir. 2009)). Permitting every forfeited legal argument on appeal would make the forfeiture doctrine the rule, not the exception. *Singleton v. Wuff*, 428 U.S. 106,

9

120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). We will enforce the rule here.

In any event, excusing forfeiture would not change the outcome in this case. Contrary to G2A's suggestion, the Tax Treaty does not bind each country to follow the investigative procedures of its internal law when gathering information in response to a treaty partner's request. In fact, Article 23 of the Tax Treaty is not about investigative procedures at all; it simply allows Poland and the United States to request that each country provide materials such as "depositions of witnesses and copies of unedited original documents … *to the same extent* such materials can be obtained under the laws and administrative practices" of the producing country. 28 U.S.T. 891, Art. 23 (emphasis added). In other words, the Tax Treaty discusses the form and extent to which countries will share information with each other, not *how* countries may obtain such information in the first instance. *See* James P. Springer, *An Overview of International Evidence and Asset Gathering in Civil and Criminal Tax Cases*, 22 Geo. Wash. J. Int'l L. & Econ. 277, 288–89 (1989) (describing the purpose of model provisions such as Article 23 in United States tax treaties as allowing treaty signatories to receive evidence in a form admissible in domestic judicial proceedings).

B

The day after the IRS served the summons on CTC, it sent notice of service and a copy of the summons by registered mail to G2A in Poland. G2A contends this violated the administrative steps for providing notice under the Hague Service Convention because Poland prohibits service of foreign documents within its borders by mail.

10

According to G2A, this prohibition on effecting service by mail encompasses the IRS's provision of notice of the third-party summons by registered mail.

The Hague Service Convention provides "a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). It applies in all cases, whether civil or commercial, where there is occasion to "transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361, Art. 1. The Convention provides several methods by which signatories can effect service of process. Primarily, each signatory must "establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698 (citing 20 U.S.T. 361, Art. 2). Besides establishing that central authority, a country may consent to other forms of service; for example, under Article 10 signatories agree not to interfere with "the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. 361, Art. 10. But Article 10 also permits signatories to object to service of documents by mail. *Id.*

Poland has opted out of Article 10, disallowing service of judicial documents by mail. *See* Hague Service Convention, Reservation of Poland**;** G2A argues that the notice of summons was a judicial document and that the IRS improperly sent it by registered mail despite Poland's decision to opt out of Article 10. G2A asserts that this alleged violation of the Convention required the District Court to quash the summons to Gate Arena.

11

The District Court declined to decide whether notice was delivered in accordance with the Hague Service Convention. Rather, the District Court held that "[e]ven assuming, without deciding, that the strictures of the Hague Service Convention are included in the administrative steps required by *Powell*, to the extent an administrative defect exists here G2A has not shown that it was prejudiced by it or that the government acted in bad faith by issuing the summons." *G2A.COM Sp. z.o.o. (Ltd.) v. United States*, No. CV 17-MC-177-LPS, 2018 WL 4219237, at \*5 (D. Del. Sept. 5, 2018).

We do not consider here whether lack of bad faith and prejudice may excuse the IRS's noncompliance with the Convention's service requirements. Instead, we hold that the statute's procedures for third-party summonses, 26 U.S.C. § 7609(a)(1), does not require service at all, so the Convention's service requirements do not apply.

The Hague Service Convention applies to *service* of documents. 20 U.S.T. 361 ("[D]esiring to create appropriate means to ensure that judicial and extrajudicial documents to be *served abroad* shall be brought to the notice of the addressee in sufficient time." (emphasis added)). The Supreme Court noted the Convention's intentional focus on "service of process in the technical sense" in contrast with the broader, less formal concept of notice. *Schlunk*, 486 U.S. at 701. And more recently, the Court has confirmed "that the scope of the Convention is limited to service of documents," without "apply[ing] to any communications that 'do not culminate in service.'" *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1509 (2017) (quoting *Schlunk*, 486 U.S. at 701).

12

Likewise, the Internal Revenue Code explicitly differentiates between "service" and "giving notice." Under § 7603(a) of the Code, a summons is *served*, but under § 7609(a)(1), *notice* of a third-party summons shall be *given* to the person identified in the summons. And § 7609(a)(2) explains that notice is sufficient when it is served *or* "is mailed by certified or registered mail to the last known address of such person." By its plain meaning, the Internal Revenue Code permits notice by service *or* through the mail.[4]

\* \* \*

Because the IRS did not violate either the United States–Poland Tax Treaty or the Hague Service Convention when it timely sent notice of the third-party summons to G2A by registered mail, we will affirm the judgment of the District Court.

---

[4] G2A argues that the statute provides *alternative means* of service, not *alternatives to* service. That interpretation conflicts with the plain meaning of the statute, and the cases cited by G2A do not support its theory. For example, *Barmes v. United States*, 199 F.3d 386 (7th Cir. 1999) did not address the distinction between service and giving notice, and nothing in the court's language suggested that it intentionally equated the two concepts. And in *Fortney v. United States*, 59 F.3d 117 (9th Cir. 1995), the contested issue was whether the IRS must provide *attested* copies of third-party summonses to persons about whom information is requested; the court did not even consider the distinction between service of summons and giving notice.