755 F.2d 469
 55 A.F.T.R.2d 85-1219, 85-1 USTC P 9283
 UNITED STATES of America and Internal Revenue Service
Special Agent Michael O. Hanson, Petitioners-Appellants,
v.
TEXAS HEART INSTITUTE and Greg C. Waddill, Associate
Administrator and Counsel, Respondents-Appellees,
Dr. Bernard M. Barrett, Jr., Intervenor-Appellee.
 No. 84-2178.
 United States Court of Appeals,
Fifth Circuit.
 March 21, 1985.
 
 Daniel K. Hedges, U.S. Atty., Houston, Tex., Charles E. Brookhart, William A. Whitledge, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sec., U.S. Dept. of Justice, Washington, D.C., for petitioners-appellants.
 Edward D. Urquhart, Silvia T. Hassell, Charles J. Escher, Houston, Tex., for Dr. Bernard M. Barrett, Jr.
 Fulbright & Jaworski, Jasper G. Taylor, III, C.W. Wellen, Houston, Tex., for Texas Heart Institute, Tex. Children's, St. Luke's & Waddell.
 Vinson & Elkins, H. Ronald Welsh, Joyce R. Scruggs, Woodward, Hall & Primm, Houston, Tex., for Methodist Hosp.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GOLDBERG, JOHNSON, and DAVIS, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 The United States Internal Revenue Service (IRS) and IRS Agent Michael O. Hanson filed petitions to enforce four IRS summonses. These summonses were directed to the Texas Heart Institute, Texas Children's Hospital, St. Luke's Episcopal Hospital, and Methodist Hospital. All four petitions to enforce were consolidated. After a hearing, the district court denied enforcement of the summonses. The IRS and Agent Hanson appeal, asserting that the district court improperly denied enforcement of the summonses. This Court agrees. We vacate the order of the district court denying enforcement, and remand this case to the district court to enter an order enforcing the summonses to the extent discussed in this opinion.
 
 I. BACKGROUND
 
 2
 Dr. Bernard M. Barrett, Jr., the taxpayer under investigation in the instant case, is a physician specializing in plastic and reconstructive surgery. Dr. Barrett is on the staff or permitted to practice at a number of hospitals in the Houston, Texas, area. At Dr. Barrett's direction, about forty percent of Dr. Barrett's patients receive some type of treatment or testing at a hospital. Dr. Barrett believes that many of his patients would not want it known that they have undergone plastic surgery. Therefore, Dr. Barrett strictly enforces a policy of confidentiality, and seeks to insure that even his patients' names are kept confidential.[1]
 
 
 3
 In 1979, the IRS began an income tax audit of Dr. Barrett. Initially, Dr. Barrett gave the IRS agents involved complete access to all his records. The agents had difficulty reconciling the income reported by Dr. Barrett on his tax returns with the amounts shown in his records. The agents indicated to Dr. Barrett's accountant that the agents thought there was a discrepancy in Dr. Barrett's income.
 
 
 4
 In 1981, the case was referred to the Criminal Investigation Division (CID) of the IRS to determine whether criminal violations of the Internal Revenue Code had occurred. Eventually, the case was assigned to Special Agent Michael O. Hanson. Hanson determined it was necessary to verify the sums each of Dr. Barrett's patients had paid Dr. Barrett in order to determine whether Dr. Barrett had reported all his income for the years at issue. In order to obtain the names and addresses of some of Dr. Barrett's patients, Agent Hanson issued summonses to all the hospitals at which Dr. Barrett practiced. The summonses requested each hospital to provide the names and addresses of Dr. Barrett's patients, as well as any information regarding amounts and method of payment for Dr. Barrett's services. The summonses also requested the names of the patients' insurance companies. The summonses asked for this information for all of Dr. Barrett's patients admitted, treated, or tested at that hospital during the period 1976 through 1980.
 
 
 5
 All but four hospitals complied with these summonses. The Texas Heart Institute, Texas Children's Hospital, St. Luke's Episcopal Hospital, and Methodist Hospital all refused to comply with the summonses. From the hospitals that did comply with the summonses, the IRS obtained names of 350 patients. Each patient was sent a form letter stating that Dr. Barrett was under investigation by the Criminal Investigation Division of the IRS, and requested each patient to provide the dates and amounts of payments they made to Dr. Barrett for medical services. The IRS received 81 responses. To date, no follow-up inquiries have been made to the remainder of the 350 patients.
 
 
 6
 Upon refusal by the four named hospitals to comply with the summonses, the Government filed petitions to enforce the summonses. Dr. Barrett intervened. The district court conducted a hearing where Agent Hanson and Dr. Barrett testified, along with other witnesses. At the conclusion of the hearing, the district court ruled that it would not enforce the summonses. The district court found that the IRS agents were acting on a good faith belief that tax fraud was involved. The district court, however, found that the summonses would only disclose the names and addresses of forty percent of Dr. Barrett's patients, while the IRS already had 100% of the names in Dr. Barrett's records. The district court based its ruling on four factors:
 
 
 7
 One is the fact that you've got all the records you need in [Dr. Barrett's] office....
 
 
 8
 The second point I am basing it on is the fact that the hospital records of names and address[es] will only reach a small percentage of all the Doctor's patients.[2]
 
 
 9
 I am also basing my ruling on the fact that prior attempts to contact patients for verifications of the amounts they paid have not been very successful....[3]
 
 
 10
 And, as I say, I am concerned about the shot-gunning of these people by sending out these form letters in a [manner] where they reached people who had no reason to be contacted at all, such as spouses.
 
 
 11
 Record Vol. 5 at 5.
 
 
 12
 The district court also stated that the evidence did not show that the only way the Government could get this information would be from the hospitals. Furthermore, the district court recited that the evidence did not show that the Government had made substantial efforts to get the information from other sources, and that the evidence did not show that the information would prove what the Government asserted it would prove.
 
 
 13
 The Government appeals the district court's denial of the enforcement petitions. The Government asserts that it met its initial burden under United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Government argues that the burden then shifted to the hospitals and Dr. Barrett and that the hospitals and Dr. Barrett failed to prove that the requirements of Powell were not met. Consequently, the Government urges that the summonses should have been enforced. In contrast, the hospitals argue that they met their burden under Powell. Dr. Barrett further asserts that the Government failed to provide notice to him as required by 26 U.S.C. Sec. 7609, and that the IRS agent involved disclosed return information in violation of 26 U.S.C. Sec. 7213. This Court concludes that the Government carried its burden under Powell, while the hospitals and Dr. Barrett did not. Therefore, the order of the district court is vacated and the case remanded to the district court to enter an order enforcing the summonses to the extent discussed in this opinion.
 
 II. STANDARD OF REVIEW
 
 14
 As this Court stated in United States v. Sun First National Bank:
 
 
 15
 Our review requires us to accept the facts found by the district court unless clearly erroneous, under F.R.Civ.P. 52(a), and to review the court's compliance with the mandates of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)....
 
 
 16
 510 F.2d 1107, 1109 (5th Cir.), cert. denied, 423 U.S. 927, 96 S.Ct. 273, 46 L.Ed.2d 254 (1975). See also United States v. Davis, 636 F.2d 1028, 1035 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).
 
 
 17
 In Powell, the Supreme Court set forth four requirements for enforcement of a summons:
 
 
 18
 [The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed ...
 
 
 19
 Powell, 379 U.S. at 57-58, 85 S.Ct. at 255. The Supreme Court added a further consideration when it admonished that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." Powell, 379 U.S. at 58, 85 S.Ct. at 255 (footnote omitted).
 
 
 20
 The Government initially bears the burden of demonstrating the first four Powell criteria. That initial burden is a minimal burden, which may be met by a simple affidavit filed with the petition to enforce the summonses by the agent who issued the summonses. United States v. Davis, 636 F.2d at 1034. See United States v. Wyatt, 637 F.2d 293, 299-301 (5th Cir.1981). This was done by Agent Hanson in the instant case. See also Powell, 379 U.S. at 57, 85 S.Ct. at 255 (the IRS has authority to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not").
 
 
 21
 Once this initial Powell showing has been made, the burden shifts to the parties resisting the summonses to demonstrate that the IRS has failed to meet its Powell burden, Powell, 379 U.S. at 58, 85 S.Ct. at 255; United States v. Linsteadt, 724 F.2d 480 (5th Cir.1984); Wyatt, 637 F.2d at 301, Davis, 636 F.2d at 1034, or to assert and prove that enforcement would represent an abuse of the court's process, Powell, 379 U.S. at 58, 85 S.Ct. at 255; United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); Wyatt, 637 F.2d at 301.
 
 
 22
 This Court concludes that the Government amply met its initial burden through Agent Hanson's declaration attached to the petition to enforce and his testimony. Thus, the burden rests on the hospitals and Dr. Barrett to demonstrate that the Government has failed to meet one of the four requirements of Powell or that enforcement of the summonses would constitute an abuse of process. This Court concludes that the hospitals and Dr. Barrett have failed to meet their burden on each issue.
 
 III. RELEVANCY
 
 23
 The district court found that the records sought by the IRS were "not the records that are going to be of benefit" to the IRS, record Vol. 5 at 4, because only forty percent of Dr. Barrett's patients' names and addresses were available from the hospitals and the mailing would only gather about a twenty percent response from that forty percent. To the extent the district court required the IRS to show some "specific benefit" from the information sought, the district court applied an incorrect standard to determine the relevancy of the information sought, as the following discussion demonstrates.
 
 
 24
 The Supreme Court recently addressed the meaning of the phrase in Powell "that the inquiry may be relevant to the purpose" of the investigation. In United States v. Arthur Young & Co., --- U.S. ----, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), the Supreme Court pointed out that 26 U.S.C. Sec. 7602 authorizes the Secretary of the Treasury to "summon and 'examine any books, papers, records, or other data which may be relevant or material' to a particular tax inquiry." 104 S.Ct. at 1500-01 (emphasis added and footnote omitted). The Supreme Court then stated:
 
 
 25
 As the language of Sec. 7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court. Cf. Fed.Rule Evid. 401. The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized. As a tool of discovery, the Sec. 7602 summons is critical to the investigative and enforcement functions of the IRS, see United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964); the Service therefore should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.
 
 
 26
 104 S.Ct. at 1501 (emphasis in original). "Records that illuminate any aspect of the [taxpayer's] return ... are therefore highly relevant to legitimate IRS inquiry." Id. at 1501-02.
 
 
 27
 In Arthur Young, the Supreme Court noted that the test for relevancy used by the Second Circuit had been widely accepted among the Courts of Appeals, including the Fifth Circuit. 104 S.Ct. 1501 n. 11. That standard is:
 
 
 28
 [W]hether the summons seeks information which "might throw light upon the correctness of the taxpayer's return." Foster v. United States, 265 F.2d 183 (2d Cir.1959), cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). [further citations omitted]. This definition has been narrowed further to require an indication of a "realistic expectation rather than an idle hope that something might be discovered." United States v. Harrington, 388 F.2d 520, 524 (2d Cir.1968).
 
 
 29
 Wyatt, 637 F.2d at 300-301. See also Linsteadt, 724 F.2d at 482. While the Supreme Court in Arthur Young did not expressly adopt this test for relevancy, its use of the phrase "illuminate any aspect of the return" appears to this Court to be a favorable reference to that standard.[4]
 
 
 30
 It is clear from the testimony at trial that the initial examination of Dr. Barrett's books indicated to the Government some type of discrepancy. Even Dr. Barrett's accountant testified that he attempted to help the IRS agent reconcile Dr. Barrett's books, but he "had difficulty with it." Record Vol. 7 at 29. The Government asserts on appeal that one of the things an agent would look for in such a case is unreported income. In other words, the agent would look for discrepancies between what patients actually paid and what Dr. Barrett recorded in his records. One way to find such discrepancies (and possibly the only way in some instances) would be to contact patients and compare the amounts their records show they paid to Dr. Barrett with what the doctor's records show he received from that patient. Surely such discrepancies would be potentially relevant to an ongoing investigation and would "shed light on the correctness" of Dr. Barrett's return.
 
 
 31
 The hospitals and Dr. Barrett argue strenuously that the Government has no "realistic expectation" of obtaining useful information from the summonses because without a one hundred percent response from the patients the IRS will be unable to calculate Dr. Barrett's gross income. It appears to this Court that information obtained from these summonses can be used in more than one way. Contacting Dr. Barrett's patients treated at the hospitals is one way for the IRS to discover unreported income or patients' names that might not appear in Dr. Barrett's office records. Whether, in fact, such misstatements actually occurred remains to be seen, but the names and addresses of patients treated at the hospitals involved here are relevant to such an inquiry. This Court concludes that the Government has a "realistic expectation" rather than an "idle hope" of obtaining useful information. Thus, this Court concludes that the names and addresses of Dr. Barrett's patients treated at these hospitals are relevant to the IRS investigation of Dr. Barrett, and the IRS is not required to show a "specific benefit" from the information sought.
 
 IV. POSSESSION OF THE REQUESTED INFORMATION
 
 32
 As one of its reasons for denying enforcement of the instant summonses, the district court stated that the IRS had all the records they needed in Dr. Barrett's office.[5] This finding is relevant to the Powell requirement that "the information sought is not already within the Commissioner's possession." Powell, 379 U.S. at 57-58, 85 S.Ct. at 255. This "already possessed" exception to the enforcement of IRS summonses has been narrowly construed by this Court. Linsteadt, 724 F.2d at 483. Once the IRS has denied possession of the summonsed information, as here by affidavit and testimony, then the burden of showing "at a minimum, 'actual possession of the information by the IRS' " shifts to the parties resisting the summonses. Davis, 636 F.2d at 1037 (quoting United States v. Garrett, 571 F.2d 1323, 1328 (5th Cir.1978)).
 
 
 33
 In Davis, the Court construed the "already possessed" exception as follows:
 
 
 34
 Read in context, we construe the "already possessed" principle enunciated by Powell as a gloss on [26 U.S.C.] Sec. 7605(b)'s prohibition of "unnecessary" summonses, rather than an absolute prohibition against the enforcement of any summons to the extent that it requests the production of information already in the possession of the IRS.
 
 636 F.2d at 1037.[6]
 
 35
 Dr. Barrett and the hospitals argue that the Government "already possessed" the information summonsed because IRS agents had reviewed Dr. Barrett's records prior to assigning the case to the Criminal Investigation Division. They cite United States v. Pritchard, 438 F.2d 969 (5th Cir.1971), for the proposition that once the IRS has examined the taxpayer's files, the information in those files is in the Government's possession. The argument is simple: once the Government has seen the documents, the Government "possesses" the documents.
 
 
 36
 That proposition does not state the law in this Circuit. In Garrett, this Court limited the import of Pritchard:
 
 
 37
 Pritchard does not bar the enforcement of the summons issued to Garrett. In Pritchard, the IRS never made reference to whether the commissioner already possessed the information sought in the summons. Therefore, we agreed with the district court that the government had not shown the requisites for enforcement. See Powell, supra. The case at bar differs from Pritchard, because here the government alleged and set about to prove that it did not possess the information sought. To defeat the summons under these circumstances, Garrett had to show actual possession of the information by the IRS.
 
 
 38
 571 F.2d at 1328. We view the requirement in this Circuit to be that the taxpayer must show that the Government actually possesses the information summonsed, such that enforcement of a summons is "unnecessary" as that term is used in section 7605(b) of the Code.
 
 
 39
 Dr. Barrett and the hospitals have failed to meet their burden in the instant case. All parties agree that the IRS conducted an audit of Dr. Barrett, and at that time Dr. Barrett made all his records available to the IRS. The IRS asserts that Dr. Barrett's accounts could not be reconciled. Dr. Barrett's accountant also testified to that fact. The IRS now seeks to discover why the accounts do not reconcile by contacting patients, perhaps to add the total amounts paid to the doctor to arrive at total income, as Dr. Barrett suggests, or perhaps, as the Government asserts, to find patients not recorded or sums not recorded in Dr. Barrett's records. As to any patients' names and addresses not appearing in Dr. Barrett's records, the IRS clearly is not in actual possession of that information. As to names and addresses that appeared in Dr. Barrett's files, the IRS agents testified that only some surnames and no addresses were copied by the IRS auditors. Thus, those names and addresses are not actually in the IRS's possession.
 
 As the Seventh Circuit has stated:
 
 40
 A second and even more compelling reason for reaching this conclusion follows from the fact that the case had been referred to Special Agent Shields for further investigation. The nature of Special Agent Shields' tax fraud audit was very much different in both approach and extent from the routine, "quality audit" made by Agent Heiting. In no manner could Agent Heiting's perusal of taxpayer's books for his routine audit fulfill Special Agent Shields' investigative needs. Therefore the government was not already in possession of the documents sought in the summons.
 
 
 41
 United States v. Lenon, 579 F.2d 420, 422 (7th Cir.1978) (citations omitted).
 
 
 42
 Thus, this Court concludes that a mere showing by the taxpayer that the IRS has previously examined the taxpayer's own records is not sufficient to show either that the IRS possesses that information or that it possesses information in the custody of parties other than the taxpayer. We conclude that the IRS is not already in possession of the summonsed information in the instant appeal; consequently, the enforcement of these summonses is not "unnecessary."[7]
 
 V. ADMINISTRATIVE PROCEDURES
 
 43
 Powell requires that the IRS must have followed "the administrative steps required by the Code." Powell, 379 U.S. at 58, 85 S.Ct. at 255. Dr. Barrett asserts that the required administrative steps were not followed in the instant case because these summonses are third party summonses according to 26 U.S.C. Sec. 7609 and the IRS did not follow the administrative procedures specified in that section. 26 U.S.C. Sec. 7609(a) requires that if a summons is served on a third party record keeper, and the summons requires production of records made or kept of the business transactions or affairs of another person, then notice of the summons must be given to the person so identified. At the time these summonses were issued, section 7609 gave to that person the right to intervene in any proceeding with respect to the enforcement of such a summons, and also gave the person entitled to notice the right to stay compliance of the summons if certain procedures were followed.
 
 
 44
 Dr. Barrett testified that he did not receive notice from the IRS in accordance with section 7609. Dr. Barrett here asserts that if the records sought by the summonses fall within the records described in section 7609, and if the hospitals fall within the definition of third party record keepers as defined in section 7609, then the IRS has failed to comply with the administrative steps required by the Code and, according to Powell, the summonses cannot be enforced.
 
 
 45
 This Court disagrees with the implicit conclusion advanced by Dr. Barrett that a failure to comply with administrative steps necessarily bars enforcement of the summonses. This Court need not reach the issue of whether the instant summonses are third party summonses because this Court concludes that even assuming these summonses are third party summonses, Dr. Barrett can demonstrate no prejudice from lack of formal notice. Consequently, Dr. Barrett shows no reason why these summonses should not be enforced. There is no dispute that in the instant case Dr. Barrett had actual notice of the summonses, that Dr. Barrett was allowed to intervene in the proceeding which was brought for the purpose of enforcing the summonses, and that the information requested by these summonses has yet to be divulged to the IRS. Thus, Dr. Barrett obtained every benefit contemplated by section 7609.
 
 
 46
 We do not construe the provision in Powell that requires compliance with administrative steps to be as mechanistic as Dr. Barrett asserts. Powell itself was concerned with section 7605(b) of the Code which requires the Secretary or his delegate to notify the taxpayer in writing that a second examination within one year of the first examination is necessary for the IRS to complete its work.[8] In United States v. Schwartz, 469 F.2d 977, 984 (5th Cir.1972), this Court indicated that the notification required by section 7605(b) is not "a perfunctory letter-writing job." In order for a second examination to be conducted, a regional commissioner must make the decision. 469 F.2d at 984. Thus, the benefit received by the taxpayer under that provision is review of the taxpayer's investigation by a superior before a second audit occurs. Powell was concerned with assuring that the taxpayer received that benefit.
 
 
 47
 In the limited context of the instant case, we hold that where the taxpayer has received every benefit of the administrative steps required by the Code, a failure by the IRS to meet the technical niceties of the statute will not bar enforcement of the summons. We note that more often than not, the taxpayer will be prejudiced by a failure to follow the requisite administrative steps. This, however, is not one of those cases. Dr. Barrett has failed to show any prejudice that resulted from an alleged failure to follow the strictures of 26 U.S.C. Sec. 7609. Thus, any alleged failure was harmless. See United States v. Hamilton Federal Savings and Loan Association, 566 F.Supp. 755, 758 (E.D.N.Y.1983); United States v. Kansas City Lutheran Home and Hospital Association, 297 F.Supp. 239, 241 (W.D.Mo.1969). Cf. United States v. Payne, 648 F.2d 361 (5th Cir.), cert. denied, 454 U.S. 1032, 102 S.Ct. 570, 70 L.Ed.2d 476 (1981); United States v. Myslajek, 568 F.2d 55 (8th Cir.), cert. denied, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978) (service requirements of section 7603 of the Code may be waived). Accordingly, Dr. Barrett has failed to meet his burden on this issue.
 
 VI. LEGITIMATE PURPOSE
 
 48
 Powell requires that the IRS must show "that the investigation will be conducted pursuant to a legitimate purpose." Powell, 379 U.S. at 57, 85 S.Ct. at 255. This Court concludes that the evidence supports the district court's finding that there was a legitimate basis for this investigation. The district court stated:
 
 
 49
 I think the Internal Revenue Service Agents have satisfied me that they are diligent, they are convinced that there is some irregularity in [Dr. Barrett's] taxes....
 
 
 50
 I am convinced they believe they are on the trail of some tax fraud.
 
 
 51
 Record Vol. 5 at 3-4. That finding of legitimate purpose for the investigation by the district court is not clearly erroneous.
 
 
 52
 Dr. Barrett asserts that the Government lacks a legitimate purpose in the instant case. Dr. Barrett asserts that his case was transferred by the revenue agent conducting the audit to the Criminal Investigation Division as punishment for his refusal to voluntarily extend the statute of limitations a second time. Dr. Barrett also alleges that the revenue agent threatened Dr. Barrett's accountant with a jeopardy assessment in order to force Dr. Barrett to agree to a second extension. Dr. Barrett contends that these alleged facts demonstrate that the summonses were issued for purposes of harassment and to force settlement of a collateral dispute as forbidden in Powell, 379 U.S. at 58, 85 S.Ct. at 255, and United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978).
 
 
 53
 This Court disagrees that these allegations demonstrate that the investigation of Dr. Barrett is not being conducted pursuant to a legitimate purpose. As Dr. Barrett's counsel conceded at oral argument,[9] there is nothing necessarily wrong with an IRS revenue agent informing the taxpayer that the taxpayer's case will be transferred to the Criminal Investigation Division once the period for assessing taxes on the years in question has run. Nor is there anything inherently wrong with informing the taxpayer's accountant that a jeopardy assessment might follow a failure to reconcile the taxpayer's records. See Chamberlain v. Kurtz, 589 F.2d 827, 835 (5th Cir.), cert. denied, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).
 
 
 54
 The real issue presented is not whether the taxpayer perceived the agent's actions as threats, but whether there is a legitimate purpose for the investigation. This Court notes that the testimony revealed that the IRS began its audit as a result of a tip, and that their initial audit demonstrated a problem reconciling Dr. Barrett's accounts. A legitimate concern on the part of the IRS was raised that Dr. Barrett was not reporting his taxes and thus, there was a legitimate purpose for this investigation. That legitimacy was not lost merely because the agent involved referred the case to the Criminal Investigation Division to avoid the effects of the expiration of the statute of limitations, Chamberlain, 589 F.2d at 835, or that the agent notified the taxpayer's accountant that a jeopardy assessment might follow.
 
 
 55
 Dr. Barrett cites allegedly improper disclosures of taxpayer return information in violation of 26 U.S.C. Sec. 7213 as further evidence that the IRS lacked a legitimate purpose for its investigation. This argument does not require us to find that the summonses involved here should not be enforced. As Dr. Barrett recognizes, any alleged improper disclosures are relevant to this case only to the extent that they demonstrate either an abuse of process (discussed infra ) or a lack of legitimate purpose. As discussed shortly, we conclude that any disclosures, if there were improper disclosures, fail to demonstrate either bad faith on the part of the IRS or improper purpose for this investigation.
 
 
 56
 26 U.S.C. Sec. 7213 provides that it is unlawful for any officer or employee of the United States to wilfully disclose to any person, except as authorized by the Internal Revenue Code, returns or return information. Such disclosure is a felony, and the statute requires that any officer or employee of the United States shall be discharged from employment upon conviction for such an offense.[10] 26 U.S.C. Sec. 7217 previously authorized and Sec. 7431 presently authorizes a civil action against the United States for any such disclosures of returns or return information by an officer or employee of the United States.[11]
 
 
 57
 "Return information" is defined in 26 U.S.C. Sec. 6103 as follows:
 
 
 58
 (b)(2) The term "return information" means--
 
 
 59
 (A) A taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return ... (emphasis added).
 
 
 60
 Dr. Barrett argues that the previous mailing improperly disclosed patients' names and that he was subject to a criminal investigation. He urges that disclosure of such information violates 26 U.S.C. Sec. 7213. Dr. Barrett asserts that these summonses should not be enforced because the Government concedes it intends to conduct a similar mass mailing to those patients whose names and addresses are obtained as a result of the enforcement of these summonses.
 
 
 61
 The Government contends, in opposition to Dr. Barrett's arguments, that disclosure of that information was authorized under section 6103(k)(6) which provides:
 
 
 62
 (b) An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.
 
 
 63
 The Government argues that disclosing the patients' names and the information that Dr. Barrett was under criminal investigation was necessary to obtain information not otherwise reasonably available, i.e., evidence of discrepancies between actual payments made by patients to Dr. Barrett and the sums reflected in Dr. Barrett's books and records.
 
 
 64
 This Court declines to determine whether any improper disclosures occurred or whether disclosure by the IRS was necessary as defined in section 6103(k)(6). That is the very issue in Dr. Barrett's civil action against the IRS. Our focus here is to determine whether such a disclosure would demonstrate a lack of legitimate purpose for the investigation in this case. We conclude that even if the IRS unlawfully disclosed either patient names or that Dr. Barrett was under criminal investigation, that disclosure does not demonstrate lack of a legitimate purpose for the investigation in this case. First, Agent Hanson testified that the form letter which was sent, which allegedly disclosed this information, was a form letter regularly used by the IRS. Thus, this allegedly improper letter did not cause Dr. Barrett to be treated differently from other taxpayers in the same situation as Dr. Barrett. Therefore, it presents no evidence of bad faith or lack of legitimate purpose in this case. Second, section 7213 does not provide that a summons should not be enforced if this section is violated. Rather, it creates criminal sanctions. Section 7217 created and section 7431 now creates a civil action for damages against the United States for such unlawful disclosures. Consequently, we conclude that Dr. Barrett's remedy in this case lies in his civil action against the United States and not in barring enforcement of the summonses.
 
 
 65
 Moreover, we note that if the district court on remand determines that improper disclosures were indeed made in the prior mailings, enforcement of the summonses may be conditioned on an IRS agreement to cease such improper disclosures. See, e.g., Dunn v. Ross, 356 F.2d 664 (5th Cir.1966). This Court holds in this appeal that a decision to completely deny enforcement of the instant summonses in their entirety was not the proper remedy for any alleged unlawful disclosures that occurred in the past. The IRS is entitled to information the hospitals possess relevant to the investigation of Dr. Barrett, but the district court may require the IRS to abide by the disclosure provisions of the Internal Revenue Code before it enforces the summonses.
 
 
 66
 This Court does not hold that unlawful disclosures of returns or return information by the IRS can never be sufficient evidence of lack of a legitimate purpose for the investigation such that IRS summonses should not be enforced. Rather, this Court holds that in this case, even accepting as true that improper disclosures occurred, any alleged improper disclosures do not rise to the level necessary to demonstrate bad faith in the issuance of the summonses or lack of a legitimate purpose for the investigation. As this Court has noted, the district court expressly found that the IRS agents in this case were acting in good faith and that finding is not clearly erroneous.
 
 VII. ABUSE OF PROCESS
 
 67
 The district court refused to enforce the summonses in the instant case because it found that enforcement would constitute an abuse of process. The district court stated:
 
 
 68
 But I will say that the Internal Revenue Service, in the use of the names that it obtained previously, has abused those names by sending out those blanket letters to the spouses of some of the patients. That is a violation of the statutes of the United States. That is divulging confidential information. That is an abuse of prior process, and it forces me to conclude that the Internal Revenue Service would do the same thing again and that would be an abuse of this court's process. And I cannot permit it.
 
 
 69
 Record Vol. 5 at 4-5.
 
 In Powell, the Supreme Court stated:
 
 70
 It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused.... The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing, as was made in this case, that the statute of limitations for ordinary deficiencies has run or that the records in question have already been once examined.
 
 
 71
 379 U.S. at 58, 85 S.Ct. at 255 (footnote omitted).
 
 
 72
 In Wyatt, this Court summarized the situations where this Court has found an abuse of process:
 
 
 73
 Such an abuse would occur if the [summons'] purpose was solely for harassment or to put pressure on the taxpayer to settle a collateral dispute, or solely for criminal prosecution, or where enforcement would contravene the attorney-client privilege, or the privilege against self-incrimination, or for any other purpose other than one of "good faith" on the part of the IRS concerning that particular investigation of civil liability.
 
 
 74
 Wyatt, 637 F.2d at 301 (citations omitted).
 
 
 75
 The Government asserts that the district court improperly based its ruling in the instant case on the privacy rights of Dr. Barrett's patients. See In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir.1953), cert. denied, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954). This Court disagrees. The district court expressly noted that its decision was not based on the patients' privacy interests. Rather, the district court found an abuse of process because, allegedly, the IRS in its previous mass mailing had improperly contacted the spouses of patients, and the IRS intended to send out a similar mass mailing to the patients whose names and addresses would be obtained by these summonses. Thus, the district court did not reach the issue of patient privacy; neither does this Court.[12]
 
 
 76
 The district court found as a matter of fact that the mailings of the IRS had improperly reached patients' spouses. That fact finding is reviewable under the clearly erroneous standard of Fed.R.Civ.P. 52(a). See Sun First National Bank, 510 F.2d at 1109. We conclude that the district court's finding was clearly erroneous. At oral argument, counsel conceded that only one such instance could be demonstrated. That one instance is insufficient to support the factual conclusion that there was widespread abuse. This Court is left with the "definite and firm conviction that a mistake has been committed," Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982), and the district court's conclusion that spouses had been contacted by the IRS cannot stand. We further hold that a single instance of a spouse being inadvertently contacted in the past does not meet Dr. Barrett's or the hospitals' burden of showing that an abuse of process would occur from enforcement of the present summonses.
 
 
 77
 The IRS mass mailings which were directed to Dr. Barrett's patients, however, disclosed that Dr. Barrett was under criminal investigation by the IRS. As discussed, supra, this information may be "return information." If indeed it is, disclosure of that information would be unlawful under section 7213 unless the Government met its burden under section 6103(k)(6). We note that it may well be an abuse of process to allow enforcement of summonses when the IRS concedes it will continue to unlawfully disclose taxpayer return information. On remand, the district court must determine (1) whether the described information falls under the definition of returns or return information in section 6103, and (2) if so, the district court must further determine whether the IRS is authorized to disclose the information under section 6103(k)(6). See, e.g., Kemlon Products and Development Co. v. United States, 638 F.2d 1315, 1323 (5th Cir.), cert. denied, 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981). The district court's concern regarding an abuse of process is reached only if it concludes that disclosure by the IRS is not authorized. This Court reiterates that even if the past disclosure was improper, the district court has discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further unlawful disclosures. A complete refusal to enforce the instant summonses in their entirety, however, fails to recognize the IRS's right to seek to obtain relevant information concerning Dr. Barrett's tax status. Under the present record, the hospitals and Dr. Barrett have not met their burden to demonstrate that enforcement of these summonses would abuse the court's process.
 
 VIII. CONCLUSION
 
 78
 While this Court recognizes that the district court has broad discretion to protect the taxpayer, see Dunn v. Ross, 356 F.2d 664 (5th Cir.1966), this Court nevertheless concludes that the district court should not have denied enforcement of the instant summonses for the reasons it stated. We hold that the Government met its initial burden under Powell, and that the hospitals and Dr. Barrett failed to demonstrate that the Powell criteria were not met or that enforcement of the summonses would constitute an abuse of process for the reasons stated by the district court. The order of the district court is vacated and the case is remanded to the district court for proceedings consistent with this opinion.[13]
 
 
 79
 VACATED AND REMANDED.
 
 
 
 [1]
 Dr. Barrett takes numerous precautions to keep his patients' identities and medical information confidential. Dr. Barrett has made arrangements with the hospitals at which he practices to admit patients under false names or even under code numbers. Dr. Barrett has informed his employees that the divulging of a name or a procedure with respect to any patient can result in immediate dismissal
 
 
 [2]
 Only forty percent of Dr. Barrett's patients' names and addresses are in the possession of all the hospitals summoned
 
 
 [3]
 Eighty-one of 350 patients responded to the prior mailing for a response rate of slightly greater than twenty percent. Dr. Barrett and the hospitals asserted that twenty percent (the response rate) of forty percent (the percentage of Dr. Barrett's patients treated at all hospitals) would indicate that only eight percent of all of Dr. Barrett's patients would respond to the IRS's mass mailing. It is noted, however, that the response rate might be much greater than the hospitals and Dr. Barrett asserted. Agent Hanson testified that he did not follow up on the prior mailing because he was awaiting the outcome in the instant case. Thus, it is very possible that the final response rate would be much greater than the eight percent figure urged by Dr. Barrett and the hospitals
 
 
 [4]
 The Supreme Court perhaps suggests an even more expansive standard: any information that is even potentially relevant to an ongoing investigation may be obtained by an IRS summons. We need not decide in the instant case whether Arthur Young modifies the standard for relevance as applied in this Circuit because the Government meets the arguably more exacting standard currently in use in this Circuit
 
 
 [5]
 The IRS contends that Dr. Barrett refuses to make this information available. Currently, the IRS has an action pending to enforce a summons seeking the taxpayer's records
 
 
 [6]
 26 U.S.C. Sec. 7605(b) provides:
 No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
 
 
 [7]
 The hospitals and doctor argue that this information could be obtained from sources other than Dr. Barrett's patients, such as Dr. Barrett's own records or his bank records. When information is obtainable from more than one source, the IRS has great discretion to choose the source it prefers. The test is not whether the IRS might be able to obtain the information from some other source, but whether the information is presently in the possession of the IRS. The hospitals' and doctor's arguments are relevant only to the questions of abuse of process and improper disclosures of return information, discussed infra
 
 
 [8]
 See supra note 6 at 13 for the text of 26 U.S.C. Sec. 7605(b)
 
 
 [9]
 The following discussion occurred at oral argument:
 Counsel: And it is very illegal to threaten a taxpayer with a referral to the Criminal Investigation Division unless he voluntarily extends ...
 Question to Counsel: But it certainly is not illegal to say if we don't get this, we're going to have to file, we're going to have to file a jeopardy assessment.
 Counsel: No, Your Honor.
 
 
 [10]
 26 U.S.C. Sec. 7213 states:
 (a)(1) It shall be unlawful for any officer or employee of the United States or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, willfully to disclose to any person, except as authorized in this title, any return or return information (as defined in section 6103(b)). Any violation of this paragraph shall be a felony punishable upon conviction by a fine in any amount not exceeding $5,000, or imprisonment of not more than 5 years, or both, together with the costs of prosecution, and if such offense is committed by any officer or employee of the United States, he shall, in addition to any other punishment, be dismissed from office or discharged from employment upon conviction for such offense.
 
 
 [11]
 Dr. Barrett has filed a civil action against the United States for alleged unlawful disclosures made by Agent Hanson in the Government's previous mass mailing to about 350 of Dr. Barrett's patients. The mailing stated that Dr. Barrett was under criminal investigation
 
 
 [12]
 Whether concerns for patient privacy bar enforcement of these summonses is an issue that should first be addressed by the district court upon remand. See, e.g., United States v. Humedco Enterprises, Inc., 512 F.Supp. 1302, 1307-08 (E.D.Pa.1981)
 
 
 [13]
 Methodist Hospital challenges the burdensomeness of the enforcement of the instant summonses because compliance would allegedly require the hospital to manually read approximately 415,000 patient files. Whatever the merits of this argument, the district court did not address it below, and thus the issue is left for an initial determination by the district court on remand