804 F.2d 1376
 58 A.F.T.R.2d 86-6286, 86-2 USTC P 9822
 UNITED STATES of America and Michael O. Hanson, Special
Agent of the Internal Revenue Service, Plaintiffs-Appellees,
v.
Bernard M. BARRETT, Jr. as President of Plastic and
Reconstructive Surgeons, P.A., Houston, Texas,
Defendant-Appellant.
 No. 85-2054.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 3, 1986.
 
 Edward D. Urquhart, Urquhart & Hassell, Charles J. Escher, Houston, Tex., for defendant-appellant.
 William A. Whitledge, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief Asst. Atty. Gen., Charles E. Brookhart, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, REAVLEY and HILL, Circuit Judges.
 ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
 (Opinion April 16, 1986, 5 Cir.1986, 787 F.2d 958)
 PER CURIAM:
 
 
 1
 After receiving the application for rehearing we have decided that we misgauged the scope of our prior holding in United States v. Texas Heart Institute, 755 F.2d 469 (5th Cir.1985). Accordingly we withdraw our opinion and substitute the following in its stead.
 
 
 2
 In this appeal, Dr. Bernard M. Barrett, Jr. challenges the district court's order enforcing an Internal Revenue Service (IRS) summons directing him to produce all the financial records of his incorporated medical practice. We affirm the district court's order enforcing the summons but remand for resolution of Barrett's claim that, to prevent an abuse of the court's process, the order should be modified so as to prohibit the IRS from violating the terms of 26 U.S.C. Sec. 6103(a).
 
 I.
 
 3
 Barrett is the president of an incorporated medical practice specializing in plastic and reconstructive surgery. In 1979 the IRS began an audit of Barrett's personal and corporate income tax returns for the years 1976, 1977 and 1978. When the initial investigation uncovered a $100,000 discrepancy between Barrett's books and his bank records, the IRS transferred the case from its civil to its criminal division.
 
 
 4
 Agent Michael O. Hanson, to whom the case was transferred, determined that it would be necessary to inquire of Barrett's patients the amount each had payed for Barrett's services. To this end, Agent Hanson sent two sets of summonses calling for patient's records, one to the hospitals where Barrett practiced and one to Barrett himself. All but four of the hospitals complied with the summonses providing a total of 350 patients' names. Agent Hanson then sent a letter to each patient advising that Barrett was being investigated by the Criminal Investigation Division of the IRS and requesting documentation of fees paid to Barrett. The IRS's right to enforce the summonses issued to the four noncomplying hospitals was litigated in this court in United States v. Texas Heart Institute, 755 F.2d 469 (5th Cir.1985). The instant appeal involves the validity of the district court's decision to enforce the IRS summons issued to Barrett.
 
 
 5
 Barrett maintains that the summons was not issued to him for a legitimate purpose. Alternatively Barrett urges this court to follow the example of Texas Heart and to remand for further proceedings to determine whether the district court's enforcement order should be modified so as to prohibit the IRS from informing his patients that he is under criminal investigation.
 
 II.
 
 6
 Barrett has fully complied with the district court's order requiring him to release the names of his patients. His claim that the district court based its decision to enforce the summons upon an erroneous finding that the IRS possesses a legitimate investigatory purpose[1] is therefore moot. Grathwohl v. United States, 401 F.2d 166 (5th Cir.1968); Lawhon v. United States, 390 F.2d 663 (5th Cir.1968).
 
 
 7
 Barrett's claim that he is entitled to remand under Texas Heart is less easily disposed of. At the time of this appeal, the IRS has not yet conducted mailings to Barrett's office patients. If Barrett was entitled, in the first instance, to obtain an order from the district court prohibiting certain uses of the summoned information, we see no reason why he should not be entitled to have those restrictions imposed upon remand. The question we must answer, then, is whether in an enforcement proceeding the district court could have appropriately restricted the IRS in the manner that it conducted mailings to Barrett's patients.
 
 III.
 
 8
 Section 6103(a) of the Internal Revenue Code[2] sets forth the general rule that tax return information is confidential and may not be disclosed by officers and employees of the United States.[3] This general right of privacy is limited by section 6103(k)(6) which provides:
 
 
 9
 An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available....
 
 
 10
 The Code provides both criminal penalties against individuals who violate the non-disclosure provisions of section 6103 and a civil right of action for damages against the United States for those whose return information is impermissibly disclosed. Section 7213 makes it unlawful to disclose any return or return information, except as authorized by the Code, and punishes a willful violation of that section by five years' imprisonment or a $5,000 fine, or both. Section 7431 provides to the individual whose return information is unlawfully disclosed a right of action for damages against the United States and sets the minimum amount of the damages at $1,000 for each unauthorized disclosure. Barrett maintains that in addition to these statutory remedies for violations of section 6103(a), Texas Heart permits him to challenge the IRS summons as an abuse of process at the enforcement proceedings. The IRS contends the proper forum for defining the interplay between sections 6103(a) and 6103(k)(6) is not an enforcement hearing but a civil or criminal trial as explicitly provided for by sections 7213 and 7431 of the Code.
 
 
 11
 We find that Texas Heart supplies the law of the case and that Barrett is entitled to a determination by the district court whether unconditional enforcement of the IRS summons would constitute an abuse of its process.
 
 
 12
 In Texas Heart we found that the disclosure by the IRS to Barrett's patients that he was under criminal investigation might be an unauthorized disclosure of return information prohibited by section 6103. On remand we directed the district judge to make three determinations:
 
 
 13
 (i) whether the statement in the prior patient mailings that Dr. Barrett was under criminal investigation was a disclosure of "return information" under section 6103; and, if so,
 
 
 14
 (ii) whether the disclosure of that information was authorized under section 6103(k)(6); and
 
 
 15
 (iii) whether enforcement of the summons should be conditioned upon requiring the IRS to desist from further unlawful disclosures.
 
 
 16
 755 F.2d at 482.
 
 
 17
 While we do not explicitly state in Texas Heart that the district court is empowered to make section 6103 determinations in an enforcement hearing, our treatment of the cause on remand can be reconciled with no other view of the case. Accordingly, we find that our mandate in Texas Heart requires the district court to consider whether enforcement of the IRS summons should be conditioned in order to protect Barrett against unnecessary disclosure of the fact that he is under criminal investigation. We affirm the order of the district court enforcing the IRS summons; we remand for the district court to determine whether the summons should be conditionally enforced.
 
 
 18
 AFFIRMED and REMANDED.
 
 
 19
 ROBERT MADDEN HILL, Circuit Judge, with whom Circuit Judge REAVLEY joins, concurring:
 
 
 20
 While I am compelled by our holding in United States v. Texas Heart Institute, 755 F.2d 469 (5th Cir.1985), to join in the panel's opinion, I believe that the result reached today is out of step with the Supreme Court's expansive reading of 26 U.S.C. Sec. 7602 which grants the IRS the authority to "examine any books, papers, records or other data which may be relevant ... [and to summon] any person having possession of books of account ... relevant or material to such inquiry."
 
 
 21
 The statutory right to privacy asserted by Barrett imposes significant limitations on the IRS's power under section 7602 to collect information which is relevant to its investigation. Had Texas Heart examined the authorities which address the scope of the IRS's powers under section 7602 I believe it would have discerned a common theme; they all decline to circumscribe purposeful and productive exercise of these powers "absent unambiguous directions from Congress." United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (quoting United States v. Bisceglia, 420 U.S. 141, 150, 95 S.Ct. 915, 920, 43 L.Ed.2d 88 (1975)); United States v. Euge, 444 U.S. 707, 715, 100 S.Ct. 874, 880, 63 L.Ed.2d 141 (1980). The following summary of the relevant authority supports this conclusion.
 
 
 22
 In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), for example, the Supreme Court refused to read into section 706(b), prohibiting "unnecessary examination[s]," a requirement that enforcements of summonses be founded on probable cause. The Court reasoned that "[a]lthough a more stringent interpretation is possible ... we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted...." 379 U.S. at 53-54, 85 S.Ct. at 252-53, quoted in United States v. Euge, 444 U.S. at 715, 100 S.Ct. at 880. Similarly in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court declined to limit the summons authority to cases where no criminal prosecution was contemplated. "Any other holding," said the Court, "would thwart and defeat the appropriate investigatory powers that the Congress has placed in 'the Secretary or his delegate.' " 400 U.S. at 533, 91 S.Ct. at 543. Again, in United States v. Bisceglia, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88, the Court, finding no discernible contrary purpose by Congress, upheld the IRS's authority under section 7602 to issue a "John Doe" summons to a bank to determine the identity of unknown individuals who might be liable for unpaid taxes. The Court again broadly construed the IRS's summonsing authority in United States v. Euge to permit it to compel the execution of handwriting samples. A contrary result, reasoned the Court, would "stultify enforcement of federal law." 444 U.S. at 715, 100 S.Ct. at 880 (quoting Donaldson v. United States, 400 U.S. at 536, 91 S.Ct. at 545). Finally, in United States v. Arthur Young & Co., the Court declined to accord a privilege to an auditor's tax accrual workpapers. "We are unable," wrote the Court, to "discern the sort of 'unambiguous directions from Congress' that would justify a judicially created work-product immunity for tax accrual workpapers summoned under Sec. 7602." 465 U.S. at 816, 104 S.Ct. at 1502.
 
 
 23
 The power to solicit information from third parties having financial dealings with a particular taxpayer is a vital part of the IRS's information-gathering authority. In connection therewith Congress has also seen fit to protect citizens from unnecessary intrusions into their privacy and has enacted civil remedies and criminal penalties. We have no indication, however, that Congress intended sections 6103 and 7431 to burden purportedly "summary" enforcement proceedings with the time-consuming litigation that section 6103(k)(6) determinations would entail. It is my belief that this statutory right of privacy is not without bounds; under the current jurisprudence of the Supreme Court it is circumscribed by the remedies explicitly made available by Congress. Although it seems to me that the IRS could pursue its investigation in the present case without informing all of Dr. Barrett's patients that he is under criminal investigation, I conclude that there is no basis for Texas Heart's expansion of the district court's authority in summary enforcement proceedings to find an abuse of discretion beyond those instances specifically envisioned by the Supreme Court in United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), namely, when "the summons has been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."
 
 JOHN R. BROWN, Circuit Judge, concurring:
 
 24
 I write separately to emphasize my strong conviction that our holding in United States v. Texas Heart, 755 F.2d 469 (5th Cir.1985), is not only controlling, but is also prudent. Dr. Barrett's request that the District Court protect his privacy rights by allowing conditional enforcement of the summonses does not restrict the IRS in their investigatory capacity beyond restrictions already imposed by Congress and the Supreme Court.
 
 
 25
 The mandate of Texas Heart provides for an easy and efficient method of avoiding the necessity of requiring the District Court to stand idly by while its processes are unnecessarily used to inflict damage upon a taxpayer's reputation when such harm can easily be prevented.
 
 Texas Heart explicitly provides that:
 
 26
 the district court has discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further unlawful disclosures.
 
 
 27
 755 F.2d at 482. Therefore, if it is an unlawful disclosure, Texas Heart vests authority in the District Court to discover and prohibit an abuse of discretion through summary enforcement proceedings.
 
 
 28
 My brothers continue to fear that permitting the District Court to inquire whether the breadth of the IRS summons, or the practices flowing from its use, can be tailored so as not to collide with the congressional purpose of protecting the taxpayer from an unnecessary invasion of his/her privacy would burden the enforcement proceedings and/or expand the inquiry of the District Court beyond the limits of United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). This fear is unnecessary.
 
 
 29
 The IRS is already required to go before the District Court to prove that it possesses a legitimate investigative purpose for the summons. Powell, 379 U.S. at 57-58, 85 S.Ct. at 254-55. Much of the evidence pertinent to the existence of a proper legislative purpose will also be relevant to determining whether the disclosure of return information is necessary to obtain information not otherwise available. The determination of whether there exists a legitimate investigative purpose for the summons is not far removed from the determination of whether the practices flowing from its enforcement are an unnecessary invasion of privacy or threaten injury to the taxpayer's reputation.
 
 
 30
 Furthermore, my reading of the authorities compels the conclusion that such an inquiry is included in the District Court's review of IRS summonses. The Supreme Court stated that the IRS's power to collect information is limited where unambiguously directed by Congress. United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984). Congress has expressly provided that the IRS investigative powers do not include the power for unnecessary invasions of privacy or injuries of a taxpayer's reputation. Sections 6103 and 7431 provide civil and criminal penalties to redress unnecessarily injurious enforcement processes by the IRS. Congress unambiguously stated that these remedies were for unnecessary injuries; they did not say the injuries were necessary but unavoidable. Congress expressly limited the IRS investigative powers to prohibit the unnecessary injuries Dr. Barrett has petitioned the District Court to enjoin.
 
 
 31
 In these days of overloaded dockets and scarce judicial resources, the other panel members would require the taxpayer to commence a separate lawsuit to redress an injury which could be prevented through the immediately available vehicle of conditional enforcement at the summons enforcement hearing.
 
 
 32
 We need not speculate on the efficacy of any such proposed remedy. Indeed, Dr. Barrett attempted to follow this very path and comply with this panel's original holding by filing a civil action for damages under Section 7431. The District Court granted summary judgment for the government and Dr. Barrett was forced to bring his claim before the Fifth Circuit yet another time. This Court reversed the grant of summary judgment. Barrett v. United States, 795 F.2d 446 (5th Cir.1986). After three cases in the District Court and three times in this Court--a total of twelve United States Judges--the doctor has yet to get the protection which Texas Heart assures.
 
 
 33
 Nowhere can the injustice of restricting taxpayers to post-injury remedies be seen as well as it can in this case. Dr. Barrett's attempts to follow the course of conduct urged by the concurring--yet unbinding--opinion have resulted in no relief and a considerable waste of time and money by the taxpayer, the government, and the courts. The position urged in this panel's original holding and in the concurring opinion on rehearing has already proven that restricting the taxpayer to post-injury remedies is not only inefficient, but most importantly, it is ineffective. This rehearing is the fourth time this circuit has heard virtually the same claim by Dr. Barrett and has yet to provide him any relief. We now have the clear indication of the burden imposed upon these proceedings and the time-consuming litigation that sections 6109 and 7431 entail; however, contrary to the concurring opinion, the true burden has resulted from prohibiting the District Court from examining the question at the summons enforcement hearings when it had all the evidence before it and was in a position to prevent both the harm and the wasteful, time-consuming litigation that has followed.
 
 
 34
 I do not believe Congress intended to preclude the courts from preventing unnecessary injuries when they adopted legislation to compensate taxpayers for unnecessary injuries. Disclosing information which would violate sections 6103 and 7431 clearly constitutes an unlawful disclosure and would be an abuse of discretion to permit the disclosure of return information that is, by statute, not necessary to the investigation. Therefore, I read Texas Heart 's mandate permitting the District Court to use conditional enforcement at the summons enforcement proceeding as totally consistent with the unambiguous intent of the guidelines established by Congress and interpreted by the Supreme Court.
 
 
 
 [1]
 Under United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964), the government must meet four requirements in order to obtain enforcement of its summons by a district court: the government must show (1) that the summons was issued for a legitimate purpose; (2) that the information sought may be relevant to that purpose; (3) that the information sought is not already within the IRS Commissioner's possession; and (4) that all administrative steps required by the Internal Revenue Code have been followed
 
 
 [2]
 All references hereinafter to sections of the Code are under 26 U.S.C
 
 
 [3]
 It is conceded by the government that the proposed mailings to Barrett's patients contain "return information."